# Wytheville

VIRGINIA PUBLIC SERVICE COMPANY V. PERCIVAL J. STEINDLER
AND OTHERS.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*Leo P. Harlow* and *Marshall H. Lynn*, for the appellant.

*Christopher B. Garnett*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

This appeal is a sequel to *Steindler* v. *Virginia Public Service Co.*, 163 Va. 462, 175 S. E. 888, 95 A. L. R. 220, to which reference may be had for a statement of the antecedent facts.

The litigation originated with the filing of a bill in equity by Steindler and others (sometimes hereinafter referred to as the complainants), to compel the Virginia Public Service Company, a corporation, to transfer to them on its books eighty shares of its preferred stock alleged to have been owned by them, to issue to them new certificates therefor, and to compel said corporation to pay to them damages for its refusal to make said transfer.

By the decree first appealed from the complainants were awarded the eighty shares of stock, dividends accumulated thereon at the rate of 7 per cent per annum from the date of the complainants' demand on the corporation for the transfer (August 24, 1931), and interest on each dividend at the rate of 6 per cent per annum from the date of its declaration until paid.

The complainants appealed from so much of the decree as did not allow them damages measured by the decline in the market value of the stock pending the litigation.

Thereupon the corporation, by a cross-assignment of error, appealed from that portion of the decree compelling a transfer of the stock and decreeing to complainants the payment of the accumulated dividends with interest.

On the first appeal we affirmed that portion of the decree which held that the complainants were *bona fide* purchasers for value of the stock, without notice of the fraud by which it had been obtained from its former own-

ers, and were entitled to the transfer, and the accumulated dividends with interest.

We further held that equity, having acquired jurisdiction of the subject matter, would administer complete relief, legal as well as equitable, and in addition to compelling a transfer of the stock, would decree to complainants the damages suffered by them for the corporation's failure to make such transfer. Accordingly the cause was remanded with directions to ascertain the damages, if any, sustained by the complainants. (*Steindler* v. *Virginia Public Service Co.,* 163 Va. 462, 475, 175 S. E. 888, 893, 95 A. L. R. 220.)

The decree first appealed from was entered on February 20, 1933. On April 24, 1933, before the first appeal was granted to the complainants below, the corporation fully complied with the decree. It transferred the stock to complainants, gave them certificates therefor, and paid to them the accumulated dividends with interest. All of which was accepted by the complainants.

On April 25, 1933, the complainants sold twenty shares of the stock at $29.00 a share; on May 1 they sold twenty shares at the same price; and on May 3 they disposed of the remaining forty shares at $32.00 each. In all they realized the total sum of $2,440 for the eighty shares.

These matters happening subsequent to the entry of the final decree, of course, did not appear in the record, nor were they otherwise brought to our attention, on the first appeal.

Upon the rehearing the lower court held that the market value of the eighty shares of stock, when offered to the corporation for transfer on August 24, 1931, was $8,000; that when the stock was received by the complainants on April 24, 1933, the market value had fallen to $2,440; and decreed that complainants were entitled to recover of the corporation the amount of such depreciation, to-wit; $5,560, as damages for its delay in making said transfer.

The present appeal brings under review this finding and decree.

Appellant contends that the decree is erroneous in that it adopts an improper measure of damages, entirely inconsistent with the remedy sought and obtained by complainants; that the complainants, having sued in equity to compel a transfer of the stock, and having obtained that relief with the incidental payment of all accrued dividends and interest, are not entitled to recover the decline in the market value of the stock; that, by selling the stock pending the litigation, complainants have placed it beyond the power of the court to do complete equity between the parties.

The contention of the appellees (complainants below) is that this court, on the first appeal, definitely and finally established as the law of the case that they were entitled to an award of damages against the corporation measured by such depreciation in the market value of the stock; that the purpose of the rehearing (under the mandate from this court) was simply to fix the amount of such damages; and that the evidence is amply sufficient to sustain the award measured by this rule.

In view of the serious contention of the appellees that the measure of damages applied by the lower court conforms to the law of the case as promulgated in our former opinion, we have carefully re-examined the record, the briefs, the opinion and the mandate on the first appeal.

As was pointed out in the former opinion (*Steindler* v. *Virginia Public Service Co.,* 163 Va. 462, 464, 175 S. E. 888, 95 A. L. R. 220) : "The bill * * * contained a prayer for damages in an amount sufficient to compensate appellants for the decline in the market value of the stock subsequent to the refusal of transfer." However, the question, as presented by the briefs on the first appeal, was, in substance—assuming that such decline is a proper item of damages, can it be recovered in the present suit in equity, or should the complainants be remitted to a separate action at law?

We held that equity having acquired jurisdiction of the subject matter would administer complete relief; that, in addition to compelling a transfer of the stock, it would decree to complainants such damages as they had suffered by reason of the corporation's refusal to make the transfer; and that complainants need not institute a separate action at law to recover such damages. The opinion concluded: "We are, therefore, of opinion that the lower court should have ascertained the damages, if any, to which appellants were entitled. The decree to that extent will be reversed, and the cause remanded for the settlement of the question of damages." (*Steindler* v. *Virginia Public Service Co.*, 163 Va. 462, 475, 175 S. E. 888, 893, 95 A. L. R. 220.)

On the first appeal we did not discuss or decide whether the depreciation in market value of the stock pending the litigation was a proper item of damages.

█ Furthermore, as we have pointed out, since the first appeal the facts have materially changed in that the complainants have accepted and sold the stock. By doing this, as we shall hereafter show, they have put it beyond the power of the court to do complete equity between the parties.

Such a change of conditions makes inapplicable the doctrine of the law of the case. As we said in *Steinman* v. *Clinchfield Coal Corp.*, 121 Va. 611, 622, 93 S. E. 684, 688, "Again, the doctrine of the 'law of the case' can only be invoked even between the same parties where the facts reappear on the second trial the same as when originally presented. Nothing is more common than a material difference between the facts presented on a second trial from those shown on the first trial, and the 'law of the case' is applicable to the state of facts existing at the time the law is announced. There is nothing in the rule to inhibit a party, on a second trial, from supplying omitted facts or from averring a different state of facts." See also, *Carter* v. *Washington & Old Dom. Ry.*, 122 Va. 458, 462, 95 S. E. 464.

We, therefore, feel free to determine what is the complainants' measure of damages for the corporation's refusal to promptly make the transfer, and whether the depreciation in the market value of the stock pending this litigation is recoverable.

The question for decision may be thus put: Is the holder of a certificate of stock, who elects to sue in equity to compel the transfer of the stock to his name, after receiving the same together with all dividends accumulated during the controversy, with interest thereon, and after selling the stock pending the litigation, entitled to recover of the corporation damages measured by the decline in the market value of the stock between the date the transfer should have been made and when it was actually made, when such decline was due to no fault of the corporation?

Although the question is not free from difficulty, we think it must be answered in the negative.

The authorities are uniform in holding that when the lawful owner of a certificate of stock presents it to the corporation and demands that it be registered in his name and that a new certificate be given him therefor, a refusal to comply with his demand gives him the choice of remedies, legal and equitable.

"He may treat the refusal to transfer the shares as a conversion and sue the corporation for their value either in trover or in an action of assumpsit, or in an action on the case, or he may compel the corporation to register the transfer by a suit in equity, * * *." 14 C. J., p. 764, sec. 1164; 7 R. C. L., pp. 269, 270, secs. 248, 249; Fletcher Cyclopedia Corporations (Perm. Ed.), vol. 12, sec. 5523; *Travis* v. *Knox Terpezone Co.*, 215 N. Y. 259, 109 N. E. 250, 251, L. R. A. 1916A, 542, Ann. Cas. 1917A, 387; *Jones* v. *Osage Oil & Refining Co.* (C. C. A. 2), 280 F. 696, 697.

In either case the shareholder is entitled to recover the damages suffered by him as the result of the corporation's refusal to make the transfer. But the measure of damages depends upon the nature of the action—

the remedy sought by the stockholder. Fletcher Cyclopedia Corporations (Perm. Ed.), vol. 12, sec. 5523, p. 421; 14 C. J., p. 771, sec. 1173.

■ If the stockholder treats the corporation's refusal to transfer the stock as a conversion thereof, and sues at law for damages, the rule is that he is entitled to recover the market value of the stock with interest thereon. 14 C. J., p. 771, sec. 1173; 7 R. C. L., p. 270, sec. 248; Sutherland on Damages (4th Ed.), vol. 2, sec. 657, p. 2320. Some authorities hold that the market value should be taken as of the date of the refusal to transfer. Others say that the stockholder is entitled to the highest market value between the date of the refusal to transfer and the time of the trial. 26 R. C. L., pp. 1151-1153; 18 Ann. Cas. 608, and note; *Hawkins* v. *Mellis, Pirie & Co.,* 127 Minn. 393, 149 N. W. 663, Ann. Cas. 1916C, 641, and note.

In *Miller & Co.* v. *Lyons,* 113 Va. 275, 297, 74 S. E. 194, 204, this court, speaking through Judge Keith, adopted the New York rule which fixes the measure of the stockholder's damages as "the highest intermediate value of the stock between the time of its conversion and a reasonable time after the owner has received notice of it to enable him to replace the stock," with interest.

The underlying theory of allowing the stockholder damages measured by the value of the stock, with interest, is that by the action of the defendant corporation he has been deprived of his property. By suing for the value he obtains and accepts that in lieu of the property. In effect, he abandons title to the property. In such an action "Satisfaction of the judgment ordinarily transfers title in the property to the defendant." *Pierpoint* v. *Hoyt,* 260 N. Y. 26, 182 N. E. 235, 236, 83 A. L. R. 1195; *Siegel* v. *Riverside Box & Lumber Co.,* 89 N. J. Law, 595, 99 A. 407. Obviously he cannot recover both the specific property and its value.

■ On the other hand, a suit in equity to compel the corporation to transfer the stock to the name of a lawful owner is a suit for specific performance of the cor-

poration's implied promise to do so. Fletcher Cyclopedia Corporations (Perm. Ed.), vol. 12, sec. 5519, p. 398; 14 C. J., p. 766, sec. 1166; *Feckheimer* v. *National Exchange Bank,* 79 Va. 80. By this action the stockholder insists upon his title to the shares. He demands the specific property. He asks that he be given all the rights of a stockholder, namely, that he be listed on the corporation's books as such, that he be given the right to participate in the corporation's affairs, to receive his share of the profits, and that he be given a certificate of stock evidencing such rights.

That a court of equity will give him this relief and such damages as he has suffered by reason of the corporation's refusal to promptly comply with his demands, was settled by us in the former opinion. *Steindler* v. *Virginia Public Service Co.,* 163 Va. 462, 175 S. E. 888, 95 A. L. R. 220.

When the complainants presented their certificates for transfer and their request therefor was refused, they were in the same position as a vendee who had paid the purchase price under a contract to buy land.

In such a case the vendee may sue at law for damages for the breach of the contract. Generally such damages are measured by a return of the purchase price paid with interest. *Matthews* v. *LaPrade,* 130 Va. 408, 423, 107 S. E. 795. Or else the vendee may sue in equity for specific performance of the contract, and, if he prevails, he will get the land which the vendor agreed to deed to him and, in addition thereto, all incidents of ownership, namely, the accrued rents, issues and profits thereof, with interest. (*Sale* v. *Swann,* 138 Va. 198, 120 S. E. 870; *Steindler* v. *Virginia Public Service Co.,* 163 Va. 462, 175 S. E. 888, 95 A. L. R. 228, and note.)

But we have been cited to no case, nor have we been able to find any, holding that the vendee, in a suit for specific performance of a contract for the purchase of real estate, may have a decree for a deed to the property, accrued rents with interest, and in addition thereto

damages measured by the decline in the market value of the land pending the litigation.

And yet in the present suit for specific performance of the corporation's agreement to transfer the stock, the complainants have sought and obtained the transfer, have received a certificate of stock in their name, together with all accrued dividends—have been clothed with all of the incidents of ownership of the stock—and in addition thereto have recovered as damages the decline in the value of the stock pending the suit.

By their form of action the complainants have insisted that they were the equitable owners of the stock as of the date it should have been transferred to them. They have demanded that they be clothed with all of the incidents of ownership as of that date, and on this theory they have obtained the transfer, and have collected all dividends on the stock, with interest. They have thus obtained every right which a stockholder had as of the desired time.

But one of the incidents of ownership of property which complainants overlook, is that the property is subject to depreciation as well as appreciation in value. This is a risk which every owner of property assumes. It is a risk which the complainants took when they asked that they be placed in the position of owners of the stock as of August, 1931.

Suppose the stock had increased in value pending the litigation. Could it be argued that the corporation had the right to pocket this profit? Of course not. Such appreciation was an incident of the ownership of the stock. Then, conversely, upon what theory can it be argued that the corporation must pocket the loss when the value of the stock declined?

It is elementary that the complainants were not entitled to recover of the corporation both the stock and its value. And yet in the present action they are, in effect, seeking to do this. They insist that they have the right to re-

cover the stock itself and at least a part of the value which they say has been lost.

It should be remembered that there is no contention that the corporation was in any way responsible for the decline in the market value of the stock. The thing sought to be recovered—the share of stock—has suffered no physical damage at its hands. Neither is there any claim that there has been any change in the assets and liabilities of the corporation so as to affect the inherent or book value of the stock.

If the complainants had wished to look to the corporation for the full value of the stock in August, 1931, when the transfer should have been made, they should have sued at law for damages. Then they would have recovered the value plus interest, and the corporation would have become the owner of the stock and would have suffered the loss due to the decline in the market value.

But the complainants say that if the transfer had been made at the time of their demand they could have then sold the stock for par, or a total of $8,000, whereas they actually received only $2,440 for it when it was obtained and sold. But how do we know they would have sold it at that or at any other particular time? There is no evidence that they were then under any obligation to sell more than twenty shares. And as to this, when they found that there was going to be a delay in the transfer, they went into the market and purchased another twenty shares and reduced their loss on this transaction to $18.75. There is no proof that even if they had had the entire eighty shares in their possession they would have sold any other part of it.

It is a matter of common knowledge that the market value of stock fluctuates from time to time regardless of the name in which it is registered. Even if the corporation had promptly transferred this stock to the names of complainants the decline would have occurred just the same, and they would have had the same "paper loss" in the market value.

It is obvious that the complainants' actual loss, if measured by the decline in the market value, depended not on the date of the *transfer* but on the date of the *sale* of the stock, which was entirely contingent upon the wishes of the complainants. Under the evidence, if the sale had taken place on the date the bill was filed the loss would have been $800; if it had taken place on the date of the trial the loss would have been $2,800; and when actually sold the decline had amounted to $5,560. It is just as likely that a sale at some subsequent date might have found the stock above par with no resulting loss to the holders.

We, therefore, see that the alleged loss, which is entirely predicated on the date on which the complainants might have sold the stock, according to their whim, is, in any event, uncertain and speculative.

That such damages, which are not the proximate result of the act complained of, but which are remote, uncertain and speculative, cannot be recovered, is elementary. *Sinclair Refining Co.* v. *Hamilton & Dotson,* 164 Va. 203, 211, 178 S. E. 777, 99 A. L. R. 929; *Perry Tie, etc., Co.* v. *Reynolds,* 100 Va. 264, 269, 40 S. E. 919; 8 R. C. L., p. 438, sec. 12; 17 C. J., p. 753, sec. 86.

We have examined all of the cases cited in the briefs and find none of them precisely in point. Our own examination of the authorities has been equally fruitless.

*Serrao* v. *Noel,* L. R., 15 Q. B. Div. 549, cited in our former opinion and strongly relied on by the complainants, merely supports the general proposition that a court of equity, having taken jurisdiction, will administer complete relief and decree any damages incidental to the main relief.

*Jones* v. *Osage Oil & Refining Co.* (C. C. A. 2), 280 F. 696, 697, cited by the defendant, is authority only for the principle that the complainants "had the alternative of bringing a bill in equity to compel transfer or bringing an action at law for the conversion of the stock."

But there is another circumstance which makes it in-

equitable that the complainants should prevail in their contention. As soon as they accomplished a registry of the stock in their names and received the certificates with accumulated dividends and interest, they sold the stock. By doing so they have made it impossible for the court to do complete equity between them and the defendant.

Had they, upon the entry of the decree compelling the transfer and delivery of the stock, refused to accept it on account of the decline in value, or even if they had retained it, and pending the litigation had informed the court that due to such decline they preferred to look to the corporation for the full value of the stock as of the date of the refusal to transfer, equity could have made the complainants whole by decreeing that the corporation pay to them the value of the stock with interest. Likewise the defendant could and should have been made whole by a return of the stock with the dividends. For equity does not look solely at the rights of one party and ignore those of the other.

In Pomeroy's Equity Jurisprudence (4th Ed.), vol. 1, sec. 388, p. 722, the principle is thus expressed: "It may be regarded as a universal rule governing the court of equity in the administration of its remedies, that whatever may be the nature of the relief sought by the plaintiff, the equitable rights of the defendant, growing out of or intimately connected with the subject of the controversy in question, will be protected; and for this purpose the plaintiff will be required, as a condition to his obtaining the relief which he asks, to acknowledge, admit, provide for, secure, or allow whatever equitable rights (if any) the defendant may have, and to that end the court will, by its affirmative decree, award to the defendant whatever reliefs may be necessary in order to protect and enforce those rights."

If, in the pending litigation, the complainants had insisted on being paid the value of the stock and had returned the shares to the corporation, the depreciation in value would have fallen on the latter. They should not

now be heard to complain if, by their own conduct in disposing of the stock, they have made it impossible that this be accomplished.

On the whole our conclusion is that in addition to the benefits which the complainants have already received, they are entitled to recover of the defendant corporation damages measured by the loss on their sale of the twenty shares of stock, to-wit: $18.75, with interest thereon from September 4, 1931; the date of such transaction.

The decree of the lower court will be accordingly modified, and as so modified will be affirmed. The appellant, having substantially prevailed on this appeal, will recover its costs expended in this court.

*Modified and Affirmed.*

HUDGINS, J., concurring:

I was under the impression that the former opinion reported in (*Steindlér* v. *Virginia Public Service Co.*), 163 Va. 462, 175 S. E. 888, 95 A. L. R. 220, settled the principles to be applied in ascertaining damages in this controversy, and so stated in a reference made to the case in *Dobie* v. *Sears, Roebuck & Co.*, 164 Va. 464, 180 S. E. 289. However, on re-examination of the former case and the questions presented on this record, I do not think we are precluded from a re-examination of the rule to be applied. On mature consideration of this question, I have reached the conclusion that the present opinion correctly states the principles applicable and, therefore, I concur in what is stated therein.