# The Rotonda Condominium Unit Owners Association

## v.

# The Rotonda Associates, et al.

Record No. 870711

June 9, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas, and Whiting, JJ., and Poff, Senior Justice

*Stephen H. Moriarty (Hyatt & Rhoads, P.C.,* on briefs), for appellant.

*John E. Coffey (David G. Fiske; Ronald L. Lord; Hazel, Thomas, Fiske, Beckhorn & Hanes, P.C.,* on brief), for appellees.

Justice Russell delivered the opinion of the Court.

The dispositive question in this case is whether a condominium unit owners' association had standing to bring an action on behalf of the individual unit owners, based on alleged defects in construction of the common elements, where the cause of action arose before July 1, 1981. We conclude that the association lacked such standing.

The Rotonda Condominium Unit Owners Association (the Association) filed a motion for judgment on July 23, 1985, against

The Rotonda Associates, Rotonda Development Corporation, and Rotonda Realty, Incorporated (collectively, the Developer). The Association alleged that the Developer was responsible for structural defects in the common elements of The Rotonda Condominium, a development in the Tyson's Corner area of Fairfax County consisting of five ten-story buildings. The motion for judgment contained counts alleging breach of statutory warranties, negligent construction, and negligent repairs.

The essential facts are undisputed. Construction began in mid-1976 and was completed in mid-1980. The first building was completed in January 1978 and the first unit was conveyed that same month. In early 1979, the first in a long series of structural defects was discovered by the owners and brought to the Developer's attention.

The fifth and last building was not completed until June 1980, and the first unit in that building was conveyed in August of that year. Because defects were coming to light during the period of construction, and because the Developer retained control of the Association until the statutorily prerequisite number of units was sold, the unit owners, in 1979, became concerned that their rights to enforce statutory warranties might expire before they could obtain control of the Association and investigate potential claims against the Developer.

When representatives of the owners brought these concerns to the Developer's attention, Giuseppe Cecchi, president of the Developer companies, responded with a series of letters in which he explicitly promised, on the Developer's behalf, (1) that the Developer would not plead the three-year statute of limitations in any suit to enforce the statutory warranty instituted by the Association within "five years of the date of accrual of the cause of action," (2) that repairs would be made of any defects for which the Developer was responsible regardless of the expiration of the statutory warranties, and (3) that the Developer would correct any mistake for which it was responsible regardless of the time such defect was discovered or reported.

The promise not to plead the statute of limitations within five years was further recorded in a written "warranty agreement" executed by both the Developer and the Association in January 1980. The unit owners took control of the Association in June 1980. The Association called many defects to the Developer's at-

tention after that time, and the Developer made many repairs from 1979 extending into early 1985.

As noted above, the Association brought this action in July 1985 against the Developer. No individual unit owners were made parties. The Developer filed pleas in bar, raising the defense of the statute of limitations to the counts alleging negligent construction and breach of warranty, and moved to dismiss the count alleging negligent repair on the ground that it failed to state a cause of action. The Developer also moved for summary judgment on the ground that the Association lacked standing to assert claims which belonged entirely to the individual unit owners. The Association, relying on the Cecchi letters and the "warranty agreement," argued that the Developer had expressly waived the right to plead the statute of limitations and was estopped by its conduct from reliance on that defense. The court sustained the Developer's pleas in bar and motion to dismiss, but denied the motion for summary judgment which raised the question of standing. We granted the Association an appeal, and the Developer assigned cross-error to the trial court's ruling that the Association had standing to sue.

■ Because we regard the question of standing as dispositive, we do not reach the Association's principal assignments of error. We held in *Chesapeake House* v. *Va. National Bank*, 231 Va. 440, 442, 344 S.E.2d 913, 915 (1986), that condominium unit owners' associations had no authority to bring representative or derivative actions to vindicate the rights of individual condominium unit owners until the Condominium Act was amended by the adoption of Code § 55-79.80(b1), effective July 1, 1981. That subsection provides, in pertinent part that

> the executive organ of the unit owners' association, if any, and if not, then the unit owners' association itself, shall have the irrevocable power as attorney-in-fact on behalf of all the unit owners . . . to assert, through litigation or otherwise, defend against, compromise, adjust, and settle any claims or actions related to common elements.

■ Because all five buildings in the Rotonda had been completed, and the first unit in each building had been conveyed before July 1981, all causes of action for breach of warranty and negligent construction had accrued before the above-quoted subsection took effect. Code §§ 8.01-230 and 55-79.79(b). Accord-

ingly, all rights of action to assert those causes of action accrued to the individual unit owners, not to the Association. *See Wells* v. *Lorcom House Condominiums' Council*, 237 Va. 247, 253, 377 S.E.2d 381, 385 (1989).

The controlling question, then, is whether Code § 55-79.80(b1), which took effect between the time the rights of action accrued and the date this action was filed, operates to transfer the individual owners' rights to the Association. The Association argues that the statute is merely procedural, appointing an "attorney-in-fact" to vindicate the individual owners' rights, and that it neither creates nor abolishes any rights of action. Therefore, the Association contends, the statute should apply retrospectively so as to affect rights accrued before its effective date. The Developer argues that the statute is substantive in nature and could not constitutionally apply to vested or substantive rights which had accrued before its effective date.

We agree with the Developer. Although Code § 55-79.80(b1) speaks in terms of appointing the Association as "attorney-in-fact" for the individual unit owners, the statute makes that appointment an "irrevocable power." Thus, the effect of the statute is to transfer irrevocably, by operation of law, whatever rights of action the individual unit owners might have had, to the Association.

In *Shiflet* v. *Eller*, 228 Va. 115, 120, 319 S.E.2d 750, 754 (1984), we held that "[s]ubstantive rights, which are not necessarily synonymous with vested rights, are included within that part of the law dealing with creation of duties, rights, and obligations." Because the statute in question here takes away rights which had accrued to individuals and creates in the Association a right to sue which did not exist before the statute's effective date, we conclude that it effects a substantive change in the law. Accordingly, it may not be given a retrospective effect, but affects only rights accruing after its effective date. *Lake of the Woods Association* v. *McHugh*, 238 Va. 1, 9, 380 S.E.2d 872, 876 (this day decided); *Shiflet*, 228 Va. at 121, 319 S.E.2d at 754. The Association, therefore, lacked standing to sue.* This holding renders moot the

---

* It is conceivable that one or more unit owners might have taken delivery of a deed after July 1, 1981, but before expiration of the appropriate warranty and limitation periods. In that event, Code § 55-79.80(b1) would have given the Association standing to sue as "attorney-in-fact" for such owners. *See Harbour Gate Owners' Association* v. *Berg*, 232 Va. 98, 109, 348 S.E.2d 252, 259 (1986). The record before us is silent on this point,

Developer's further contention that whatever authority the Association possessed was vested in the Association's Board of Directors as its "executive organ," rather than in the Association itself.

■ The foregoing holding also subsumes the Association's final assignment of error, which asserts that the trial court erred in dismissing its count for "negligent repairs." It is apparent from the motion for judgment and the Association's argument concerning this count, that the Association sought only to recover damages for the economic losses associated with the cost of repairing the defects in the common elements. Such economic losses are not recoverable in tort; they are purely the result of disappointed economic expectations. The law of contracts provides the sole redress for such claims. *Sensenbrenner* v. *Rust, Orling & Neale*, 236 Va. 419, 424, 374 S.E.2d 55, 58 (1988).

■ Here, the unit owners and the Developer bargained for certain standards of quality which allegedly were not met. The unit owners' sole redress lay in actions for breach of their contracts of purchase, or for breach of the statutory warranties. As noted above, all rights of action to vindicate such claims had vested in the individual unit owners before July 1, 1981, and were not transferred to the Association by Code § 55-79.80(b1). Therefore, the Association lacked standing to sue on that count also.

Although we adopt a different course of reasoning than that applied by the trial court, we reach the same result. Accordingly, we will affirm the judgment. Code § 8.01-681.

*Affirmed.*

---

however, and the Association raised it neither in the trial court nor on appeal. Therefore, we will not consider it. Rules 5:17(c); 5:25.