# William Ward

### v.

# Ernst & Young

Record No. 921107

September 17, 1993

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell and Keenan, JJ.,
and Poff, Senior Justice

*Bruce M. Bender (James A. McGovern; Jeffrey M. Axelson; Van Grack, Axelson, Williamowsky & Jacobs*, on briefs), for appellant.

*Bruce M. Cormier (Kathryn A. Oberly; John P. Corrado, Mark W. Wasserman; Ernst & Young; Hazel & Thomas*, on brief), for appellee.

*Amicus Curiae:* Virginia Society of Certified Public Accountants (Ralph L. "Bill" Axselle, Jr.; Sarah Hopkins Finley; Williams, Mullen, Christian & Dobbins, on brief).

SENIOR JUSTICE POFF delivered the opinion of the Court.

We awarded an appeal to a plaintiff, the sole stockholder of a corporation, from an adverse judgment entered in an action for breach of contract and professional negligence brought against an accounting firm engaged by the corporation. The plaintiff claimed damages for the loss of a portion of the proceeds of the sale of his stock resulting from the defendant's error in calculating the corporation's "deferred revenue". The trial court granted the defendant's demurrer to the original motion for judgment. At the conclusion of the plaintiff's evidence on an amended motion for judgment, the court granted the defendant's motion to strike and entered summary judgment for the defendant. Accordingly, we will review the facts of record and the inferences reasonably deducible therefrom in the light most favorable to the plaintiff.

In March 1987, HAZCO International, Inc. (HAZCO), a chemical waste disposal company, and its sole stockholder, William Ward (Ward), entered into an agreement with J.H. Whitney & Company and another investor (collectively, Whitney), to sell Whitney a portion of Ward's stock and certain HAZCO treasury stock. The agreement, under which Ward was to receive several hundred thousand dollars, was made subject to an audit of HAZCO's financial posture for the year ending December 31, 1986 conducted by a "Big Eight" accounting firm. HAZCO retained Arthur Young & Co. (hereinafter, its successor, Ernst & Young) in a contract evidenced by a letter

of intent dated April 24, 1987 addressed to Redmond Clark, HAZCO's president.

The letter provided that "[w]e are pleased to be certified public accountants for HAZCO . . . and to examine and report on your annual financial statements." The letter fixed the fees to be charged "for the first year" and stated that "[w]e also would like to be helpful on any problems that might arise, and hope that you will call at any time you think we can be of assistance." Clark testified that Ernst & Young "was aware from the very first . . . of the [Whitney] transaction that at that time was envisioned."

Ernst & Young conducted the audit and issued its report dated July 24, 1987. In the course of preparing the report, it became necessary to create and apply a formula to calculate "deferred revenues" because, as the report explained, HAZCO "often obtains significant deposits from customers at the time of contract execution for services to be rendered in the future."

In September 1987 following consummation of the Whitney sale, Ward and Clark began discussions with Chemical Waste Management, Incorporated (Chem Waste), for sale of the remainder of Ward's stock holdings. In the ensuing months, HAZCO's employees contacted Ernst & Young for assistance in the preparation of HAZCO's balance sheets and income statements. Ernst & Young furnished them a worksheet employing the same deferred-revenue formula it had devised for the 1986 audit. Ernst & Young conducted a "review" of the financial statements prepared in reliance upon that worksheet with knowledge that those papers and the 1986 audit report were germane to the Chem Waste negotiations.

In December 1987, Ward signed a letter of intent to sell all of the HAZCO stock to Chem Waste, delivered copies of the 1986 audit report and financial papers reviewed by Ernst & Young to Chem Waste, and reacquired all the stock previously sold to Whitney. Ward and Chem Waste executed a formal stock purchase agreement on January 26, 1988.

In that agreement, Ward warranted that the papers he had delivered "present fairly the financial position of the COMPANY at each of the said balance sheet dates and the results of its operations for each of the said periods covered, and they have been prepared in conformity with generally accepted accounting principles applied on a consistent basis . . . ." Ward covenanted to "indemnify and hold the PURCHASER harmless" for any breach of that warranty and to deposit one million dollars of the purchase price in an escrow

account "for the purpose of providing a fund from which . . . the Seller's obligations to indemnify the Purchaser are to be satisfied."

After the parties had closed on the agreement, Chem Waste discovered "discrepancies in pre-acquisition account balances resulting in an overstatement of assets and an understatement of liabilities" and made a claim against the escrow deposit. Ward conducted an independent evaluation of the claim, acknowledged that accounting errors had accorded his stock an inflated value, and authorized the escrow agent to pay Chem Waste $500,000 from the account, including "$345,499 for . . . Deferred Income items".

Ward filed a motion for judgment against Ernst & Young, seeking damages in the sum of $600,000. In count one, he alleged that "[a]s a result of the Defendants' failure to provide correct calculations and formulas . . . the Defendants have breached the contract entered into between the parties . . . ." Asserting an alternative claim in count two entitled "Negligence-Professional Liability", Ward alleged that his damages were caused by "formulas and calculations . . . [that] were clearly erroneous and not prepared with the degree of care and skill, which a reasonably competent accountant, acting in similar circumstances would use . . . ."

Ernst & Young filed a demurrer to both counts. The trial court granted the demurrer to the first count "on the ground that there is no standing . . . for this plaintiff to maintain a breach of contract action." The court granted the demurrer to count two on the grounds that "plaintiff's claim for damages suffered as a result of professional negligence lies in contract, not tort," and that "in professional negligence cases involving purely economic loss damages, privity [of contract] is still required."

With the court's permission, Ward filed an amended motion for judgment asserting a cause of action as a third-party beneficiary of the contract between HAZCO and Ernst & Young. The trial court overruled a demurrer to that pleading, and the case proceeded to trial. At the conclusion of Ward's evidence, the court ruled that "you can't make a third-party beneficiary case out of this, because there is no intention in either oral [statements] or written documents to benefit specifically Mr. Ward as a third party beneficiary." Affirming that ruling in a final order entered April 17, 1992, the court sustained the defendant's motion to strike the evidence and entered summary judgment for Ernst & Young.

## I. THE ORIGINAL MOTION FOR JUDGMENT

Ward assigns two errors on appeal, one addressed to the original motion for judgment and the other to the motion as amended. First, he asserts that ''[t]he lower court erred in granting the Defendant's Demurrer to the Motion for Judgment because Virginia law does not require privity of contract for a party to maintain a breach of contract or negligence action for accountant malpractice.'' As phrased on brief, one of the questions presented by this assignment is whether ''this Court [should] adopt the approach in Restatement (Second) of Torts § 552 (1977) to allow a third party to maintain a cause of action for accountant malpractice in either contract or tort, even without privity of contract?''

In both the statement of the first assignment of error and in the definition of the first question presented by that assignment, Ward seems to suggest that an action for breach of contract should be treated the same as an action for negligence. His argument on brief, however, focuses upon the requirement of ''privity of contract . . . to maintain a cause of action in tort against an accountant'' and ''an accountant's duty to a non-contractual party for professional negligence.'' We will maintain that focus in our analysis of the issues related to the trial court's ruling granting the demurrer to Ward's original motion for judgment.

■ We accord due respect to the views of courts in the 18 jurisdictions that have adopted the Restatement rule.[1] We decline, however, to carve out and apply against accountants an exception to the rule we have consistently applied in actions seeking damages for an economic loss resulting from negligent performance of a contractual

---

[1] In pertinent part, the Restatement rule provides:

§ 552. Information Negligently supplied for the Guidance of Others

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

commitment brought by a non-party to the contract. In four recent cases, we have held that privity of contract is an essential element of such an action at law.

In *Blake Construction Co. v. Alley*, 233 Va. 31, 353 S.E.2d 724 (1987), a general contractor on a construction project sued the architects, demanding damages resulting from negligence in the performance of their duties under their contract with the owner. The general contractor had a bilateral contract with the owner but none with the architects. The architects filed a demurrer, "relying on the common-law rule that a party not in privity may not recover damages where there is no physical injury to person or property." *Id.* at 33, 353 S.E.2d at 725. The trial court entered judgment granting the demurrer, and we affirmed the judgment.

On appeal, the general contractor invoked Code § 8.01-223 which provides that "where recovery of damages for injury to person, including death, or to property resulting from negligence is sought, lack of privity between the parties shall be no defense." The general contractor argued that this statute was intended to overrule the common-law privity requirement, irrespective of the nature of the loss for which recovery is sought.

■ Citing the doctrine that statutes in derogation of the common law are to be strictly construed, and noting that the statute in issue is addressed solely to actions claiming damages for injuries to person or property, we held that "[w]e cannot impute to the General Assembly an intent to abrogate by implication the privity requirement in cases where no such injury is alleged, thereby allowing negligence actions for solely economic loss." *Id.* at 34, 353 S.E.2d at 726. Explaining that negligence is actionable only for violation of a duty to protect the safety of the person or property of another, we applied the principle that " 'where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon.' " *Id.* at 35, 353 S.E.2d at 726 (quoting *Crowder v. Vandendeale*, 564 S.W.2d 879, 882 (Mo. 1978) (emphasis in original)).

In *Sensenbrenner v. Rust, Orling & Neale*, 236 Va. 419, 374 S.E.2d 55 (1988), we reaffirmed and applied the rule in *Blake*

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

against landowners. In that case, the landowners brought a negligence action against an architect and a swimming pool subcontractor engaged by a general contractor employed by the landowners.

■ Next, in *Rotonda Cond. Owners v. Rotonda Associates*, 238 Va. 85, 380 S.E.2d 876 (1989), this Court held that a condominium owner's association had no standing to bring a suit to enforce the rights of individual condominium owners against a developer for failure to make appropriate repairs of structural defects in the common elements. At the foot of the opinion, we acknowledged that the holding on that issue "subsumes the Association's final assignment of error, which asserts that the trial court erred in dismissing its count for 'negligent repairs.' " *Id.* at 90, 380 S.E.2d at 879. Yet, invoking the rule applied twice before, we noted that

> the Association sought only to recover damages for the economic losses associated with the cost of repairing the defects in the common elements. Such economic losses are not recoverable in tort; they are purely the result of disappointed economic expectations. The law of contracts provides the sole redress for such claims.[2]

*Id.* (citation omitted).

■ Our most recent application of the rule requiring privity of contract in order to recover damages for economic loss under a negligence theory is found in *Copenhaver v. Rogers*, 238 Va. 361, 384 S.E.2d 593 (1989). In *Copenhaver*, the remaindermen named in a failed testamentary trust brought an action for legal malpractice against the trustors' attorney, claiming damages for loss of their interest in half the residuary share. Citing *Blake* and *Sensenbrenner* in an opinion affirming the trial court's decision to sustain the attorney's demurrer, we said:

> This is not a case involving personal injury or property damage, areas in which the common-law privity rules have been modified by statute. *See, e.g.*, §§ 8.01-223 and 8.2-318. Instead, this is a case involving a claim solely for economic

---

2 These observations cannot fairly be interpreted to mean that economic losses are never recoverable in tort. The language employed here has its predicate in the tort alleged in the Association's *negligence* count; it does not purport to foreclose a right to recover an economic loss in other tort actions such as those for fraud, conspiracy to injure another in a trade, business, or profession, or tortious interference with contract.

losses. It is settled in the Commonwealth that no cause of action exists in such cases absent privity of contract.[3]

*Id.* at 366, 384 S.E.2d at 595 (citations omitted).

■ In our view, it is conceptually impossible to distinguish Ward's claim from the plaintiffs' claims in these four cases. All sought damages for economic losses sustained as a result of services performed under contracts to which the plaintiffs were not parties. Lacking privity, each attempted to convert his breach of contract cause of action into a negligence cause of action.

■ Urging us to adopt an exception to the privity requirement when the alleged tortfeasor is an accountant, Ward argues that "[a]ccountants can be differentiated from attorneys and architects in several ways". He reasons that "Certified Public Accountants . . . by being certified . . . are vouching for the reliability and accuracy of their work"; that "they are inviting the public to rely on . . . their work"; and that "it is foreseeable that third parties . . . will rely on the accountants' work . . . ." We find no merit in these arguments. While attorneys and architects are not "certified", they are licensed to invite the public to rely on their professional competence, and they are regulated and disciplined in the performance of services to those who accept their invitation.

With respect to his "foreseeability" argument, Ward overlooks the fact that, although it was predictable that the general contractor in *Blake* and the landowners in *Sensenbrenner* would rely on the work of the architects and contractors in those cases, this Court declined to exempt the plaintiffs from the rule requiring privity of contract.

In a second question raised by his first assignment of error, Ward inquires: "In any event, did William Ward sustain property losses and not economic losses such that privity is not required?"

In support of his view that the loss he suffered was a property loss within the intendment of Code § 8.01-223, Ward cites Code § 8.8-102(1)(a) (security "is a share . . . or other interest in property"); *Commonwealth v. Morris*, 196 Va. 868, 872, 86 S.E.2d 135, 138 (1955) (sale of stock is taxable property transaction); *Va. Public Service Co. v. Steindler*, 166 Va. 686, 695, 187 S.E. 353, 356 (1936)

---

[3] The clear implication of this language is fully consistent with the fair interpretation of the language in *Rotonda* quoted above, *viz.*, that, when privity exists, economic losses may be recovered under a negligence theory.

(stock is "property . . . subject to depreciation as well as appreciation in value"); *Iron City Bank v. Isaacsen,* 158 Va. 609, 628, 164 S.E. 520, 526 (1932) ("[a] share of stock of a corporation is intangible personal property partaking of the nature of a chose in action . . . .").

Since "both the Virginia courts and the legislature recognize corporate stock as personal property," Ward reasons, "the amount received from the sale of [his] stock is a personal property loss." Consequently, he insists, lack of privity of contract is no defense to his negligence action.

While the interest represented by a stock certificate is, indeed, an intangible personal property right, we do not agree that Ward's loss was an "injury . . . to property resulting from negligence" within the intendment of Code § 8.01-223. Our decision is controlled by the distinction we drew between property losses and economic losses in *Sensenbrenner v. Rust, Orling & Neale,* 236 Va. 419, 374 S.E.2d 55 (1988). There, the landowners contracted with a builder for construction of a house with a swimming pool. The builder engaged an architect and a pool subcontractor. The landowners had no contract with either. After the project was completed, the landowners discovered that the pool, constructed on fill dirt, had settled and that water seeping from broken pipes had caused a crack in the bottom of the pool and in the foundation of the house. Alleging negligence in the design and installation of the pool and in supervision of the project, the landowners filed suit in the United States District Court for the Eastern District of Virginia against the pool subcontractor and the architect. The district court granted the defendants' motions to dismiss on the ground that the landowners, lacking privity of contract, had suffered only an economic loss. On appeal to the United States Court of Appeals for the Fourth Circuit, the landowners argued that their loss was property damage and that, under Code § 8.01-223, privity was not required. Responding to a question certified to us, we agreed with the ruling of the district court.

Defining a test for the classification of the character of a loss, we said:

> The controlling policy consideration underlying tort law is the safety of persons and property — the protection of persons and property from losses resulting from injury. The controlling

policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons or property on one hand and economic losses on the other.

The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package. The package included land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective — one or more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained-for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair. This is a purely economic loss, for which the law of contracts provides the sole remedy.

*Id.* at 425, 374 S.E.2d at 58.

■ Borrowing from this language, we think that the services of Ernst & Young were intended to meet a certain "bargained-for level of quality". Ward's reliance upon the "substandard" professional services rendered by Ernst & Young induced him to make the warranties and to execute the escrow indemnity covenant that became the foundation of his liability to Chem Waste. His liability was "measured by" the "diminution in the value of the whole" stock package, *i.e.*, the difference between the sale price of his stock fixed in reliance upon the bargained-for services and the value determined by a correct accounting formula. In effect, Ward "allege[s] nothing more than disappointed economic expectations." His loss, then, was "a purely economic loss".

■ Because Ward, lacking privity of contract with Ernst & Young, sought to recover damages for economic loss under negligence principles, we hold that the trial court did not err in granting the demurrer to the original motion for judgment.

## II. THE AMENDED MOTION FOR JUDGMENT

In support of his second assignment of error, Ward challenges the trial court's decision to strike his evidence and to enter summary

judgment against him on the amended motion for judgment. Specifically, he argues that the trial court erred by ruling as a matter of law that he "was not a third-party beneficiary of the contract between Hazco and [Ernst & Young]."

At common law,

> the general rule was that, whether the contract was express or implied, by parol or under seal, or of record, the action must be brought in the name of the party in whom the legal interest was vested, and that this legal interest was vested in the person to whom the promise was made, and consequently that he or his privy was the only person who could sue in a court of law upon such contract.

*Thacker v. Hubard*, 122 Va. 379, 387, 94 S.E. 929, 931 (1918); *accord*, *Cemetery Cons. v. Tidewater Fun. Dir.*, 219 Va. 1001, 1003, 254 S.E.2d 61, 62 (1979). However, "in contracts *not under seal*, it has been held, for two centuries or more, that any one *for whose benefit* the contract was made may sue upon it". *Thacker*, 122 Va. at 387, 94 S.E. at 931 (emphasis in original).

This exception to the general rule was codified in the 1849 Code of Virginia, ch. 116, § 2. *Thacker*, 122 Va. at 390, 94 S.E. at 931-32. The current successor to that statute, Code § 55-22, provides:

> **When person not a party, etc., may take or sue under instrument.** — An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of the person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well.

This Court enforces third-party beneficiary contracts when "[t]he third party . . . show[s] that the parties to the contract clearly and definitely intended it to confer a benefit upon him." *Professional Realty v. Bender*, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976).

A trial court may not enter summary judgment "if any material fact is genuinely in dispute." Rule 3:18. And when summary judgment is based upon a motion to strike a party's evidence, we view the evidence and the inferences reasonably raised thereby in the light most favorable to the losing party. *Meador v. Lawson*, 214 Va. 759, 761, 204 S.E.2d 285, 287 (1974).

With that standard in mind, we will consider Ernst & Young's contention that "there is nothing in the 'four corners' of the only written contract in this case . . . that evidences [Ernst & Young's] agreement to perform work in connection with the Chem Waste stock sale, much less its intent to benefit Ward directly in doing so." We look to the entire record before us.[4]

The contract between HAZCO and Ernst & Young grew out of a clause in the preliminary agreement with Whitney requiring an audit of HAZCO's financial condition for the year 1986. As the April 24, 1987 letter of intent evidencing that contract shows, the parties contemplated an employment relationship continuing beyond that year. HAZCO's president testified that Ernst & Young "was aware from the very first" that the audit was crucial to the negotiations with Whitney. Ward testified that he was "sure that they knew this was the reason we needed the audit . . . ." Ernst & Young was also aware that Ward, HAZCO's sole stockholder, would receive several hundred thousand dollars from the sale of some of HAZCO's stock.

Later that year, Ernst & Young learned about the negotiations with Chem Waste. HAZCO directed Rebecca Pollino, its acting financial controller, to prepare balance sheets and income statements for the fall months. Pollino testified that she contacted Ernst & Young to learn "[h]ow to get the deferred revenue and income figures" and to obtain "a written format to use to back up what they had given . . . over the phone". In the process of gathering information needed to close the sale of the HAZCO stock, all of which was then owned by Ward, Pollino held several conversations

---

[4] Relying upon a case decided in another jurisdiction and citing *Richmond Center v. Jackson Co.*, 220 Va. 135, 255 S.E.2d 518 (1977), Ernst & Young stated on brief that "Virginia courts look to the four corners of the contract" to determine intent to benefit. What we said in *Richmond Center* was that "[i]n the present case, we need look no further than the four corners of this contract". *Id.* at 142, 255 S.E. at 523.

with Ernst & Young employees. She described one particular telephone conversation in which, in answer to their question, she had read excerpts from the written draft of the stock purchase agreement then under consideration by Ward and Chem Waste.

In response to Pollino's request, Ernst & Young supplied a written worksheet which she "used to book the monthly deferred revenue and the monthly earned revenue". The worksheet employed the same deferred-revenue formula Ernst & Young had created for the 1986 audit. Ernst & Young conducted a "review" of Pollino's monthly statements before they were submitted to Chem Waste.

Patricia Smallwood, identified as "head of HAZCO's financial department", testified that during the period of negotiations with Chem Waste, she had "[c]onversations . . . with [Ernst & Young] in terms of discussing the actual deal with them". Asked if she had "personal knowledge of whether [Ernst & Young] and their representatives were aware of the fact that the 1986 audited financial statements and the 1987 November unaudited financial statements were being used as a part of the Chemical Waste transaction", Smallwood answered in the affirmative.

Finally, at some point prior to the sale, Smallwood attended a meeting with Kirk Brown of Ernst & Young and representatives of Chem Waste to discuss the issue of deferred revenues. According to Smallwood, the deferred-revenue formula was explained to the "Chemical Waste people, and there was some discussion as to why it was relevant to Hazco's business, and discussions of whether it was appropriate or not appropriate, and what generally accepted accounting principles were being used to support the [Ernst & Young] contention of the deferred revenue calculation."

As we have said, a third party's right to claim relief as the beneficiary of a contract between others requires evidence that the contracting parties intended to confer a benefit upon that particular claimant. Citing several cases in which we have denied a third-party claimant relief for failure to prove intent to benefit, Ernst & Young argues that Ward was "only an incidental and not a direct beneficiary under Virginia law."

That argument ignores the fact that the subject of the sale to Chem Waste was the stock, not the assets of the corporation. As the sole owner of HAZCO stock, Ward was the primary beneficiary of the benefits to be conferred upon execution of the Ward-Chem Waste contract.

■ We are of opinion that the evidence, viewed in the light most favorable to Ward, was fully sufficient to raise a jury question whether the parties to the HAZCO - Ernst & Young contract intended to benefit Ward. Whether it was sufficient to persuade a jury is another question. We hold that the trial court erred in withholding that question from the jury, and we will reverse the judgment in part and remand the case for a new trial on the amended motion for judgment.

*Affirmed in part,*
*reversed in part,*
*and remanded.*