Present: Carrico, C.J., Compton, Stephenson, Lacy, Hassell, Koontz, JJ., and Whiting, Senior Justice

LEE'S HILL HOMEOWNERS, et al.

OPINION BY
v. Record No. 942231          SENIOR JUSTICE HENRY H. WHITING
                                           November 3, 1995
RALPH DEWAYNE CARTER, et al.

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
J. Peyton Farmer, Judge

In this appeal, we decide whether the chancellor erred in holding that an instrument creating easements in the common area of a subdivision permits the developer to shift those easements from one part of the common area to a newly added part of the common area.

In December 1989, Lee's Hill Partnership, the owner and developer of a tract of over 1,000 acres in Spotsylvania County (the developer), recorded a "Declaration for Lee's Hill" (the declaration) subjecting the land to a number of "covenants, restrictions, reservations, easements, servitudes, liens and charges." The declaration also provided for the establishment of the "Lee's Hill Community Association, Inc." (the community association), a nonstock corporation to which the developer would convey fee simple title to various areas in its proposed development. Although these separate areas were apparently conveyed to the community association at different times, they were collectively described as the "common area" of the development.

The common area was to be owned by the community association "for the benefit, use and enjoyment of the [lot] [o]wners," to whom the developer granted "a non-exclusive right and easement of

use and enjoyment."  In February 1991, the developer conveyed Parcel G, Section 1B of Lee's Hill to the community association as part of the common area and apparently as "open space."[1] Parcel G is a long, narrow, triangular strip of land lying generally south of land owned by Mary Lee Carter and Walter L. Carter, Jr., the parents of Ralph Dewayne Carter, and fronting the north side of Amelia Street.  The somewhat incomplete and unsatisfactory record in this appeal does not fully describe Parcel G.  It merely shows that Parcel G has a depth of 58.66 feet on its western boundary and narrows continuously to its eastern boundary, but does not specify the lengths of Parcel G's boundary with the Carters' land or of its frontage on Amelia Street.

After the developer's conveyance of Parcel G to the community association, various lot owners and their families used it for walking or jogging, sled riding, and as a place to congregate and visit with neighbors.  The lot owners also regarded this common area as an aesthetically pleasing "green space" separating the subdivision property from "a very busy

---

[1]The declaration does not define the term "open space," nor does the deed to the community association indicate that the land conveyed was to be treated as part of the open space.  However, the witnesses and counsel for the lot owners described that land as "green space" or "open space."

road."  At a time not shown in the record, the lot owners formed an unincorporated association known as "Lee's Hill Homeowners" to protect their individual rights "in a collective fashion."[2]

In May 1994, the community association conveyed 0.0479 acres of Parcel G to the developer in exchange for the developer's conveyance to the community association of 0.48489 acres located elsewhere in the development as a substitute common area.  Lying immediately south of the Carter land, the 0.0479 acre parcel (Parcel G-2) begins 76.93 feet east of Parcel G's western boundary, fronts 62.10 feet on the north side of Amelia Street, and extends 40.67 feet and 29.91 feet, respectively, on its western and eastern boundaries.

Immediately thereafter, the developer conveyed Parcel G-2 to Ralph Dewayne Carter and Robin Keith Carter (the Carters), who had acquired part of his parents' land immediately north of Parcel G-2.  Later, the Carters began to construct two driveways across Parcel G-2 to serve a house they had moved to the land north of Parcel G-2.  Whereupon, "Lee's Hill Homeowners" and

_____

[2]The only indication of the formation and purpose of "Lee's Hill Homeowners" is in the averments of the bill of complaint, which are denied in the Carters' answer to the bill of complaint. However, the Carters have not questioned the right of the homeowners association to participate in the suit and this appeal.

Kelly M. Boehringer, a lot owner, (collectively the lot owners) filed this suit against the Carters to enjoin their construction and use of the driveways as an interference with their easements in Parcel G, including Parcel G-2.

Following an ore tenus hearing, the chancellor sustained the Carters' motion to strike the lot owners' evidence on the grounds that (1) the terms of the declaration gave the community association and the developer the right to exchange one part of the common area for another part, and (2) the lot owners had failed to show that their easements were "materially and adversely affect[ed]" by the exchange. The lot owners appeal.

In conformity with well-established appellate principles, we have viewed the facts in the light most favorable to the lot owners since the chancellor struck their evidence without hearing the Carters' evidence. Ward v. Ernst & Young, 246 Va. 317, 330, 435 S.E.2d 628, 634-35 (1993).

The parties agree that the lot owners had easements in Parcel G-2 that were appurtenant to their lots. They disagree as to whether those easements were terminated upon the community association's conveyance to the developer. Our decision is controlled by the provisions of the developer's declaration and the principle that if the pertinent terms of a written instrument are clear and unambiguous, as we believe they are in this case, we do not resort to rules of construction. State Farm Fire and Casualty Co. v. Walton, 244 Va. 498, 502, 423 S.E.2d 188, 191

-4-

(1992). Instead, we apply those terms as written. Id.

I.

The lot owners assert that the provisions of § 3.8 of the declaration prohibit this exchange of a part of the common area for another part located elsewhere in the development. Section 3.8 provides that each lot owner's easement in the common area is "appurtenant to each Lot" and further provides that "[a]ny purported conveyance or other transfer of such rights and easements apart from the Lot to which such rights and easements are appurtenant shall be void." (Emphasis added.) Clearly, this provision is a prohibition against a lot owner's attempted conveyance of these easements apart from a conveyance of the lot, not a prohibition against the developer's transfer of these easements appurtenant to each lot to another part of the common area, the situation in this case. Thus, we find no merit in this assertion.

Next, the lot owners contend that the declaration gives the developer no clear and unambiguous right to extinguish their easements in Parcel G-2 by reacquiring that parcel and conveying it to the Carters. They further contend that since the easements were incapable of being extinguished, the developer's conveyance of fee simple title to the Carters could not remove the burden imposed upon Parcel G-2 by their recorded, perpetual easements.

In response, the Carters assert that the developer's right to extinguish the lot owners' easements in Parcel G-2 is clearly

and unambiguously set forth in §§ 2.4 and 2.6 of the declaration. They also assert that the terms of the declaration do not create perpetual easements specifically in Parcel G-2, but rather easements that may be shifted to other parcels of land within the development.

First, we consider whether the developer had a right to reacquire Parcel G-2 and convey it to the Carters. Section 2.4 of the declaration gives the community association the power to "convey the Common Area owned in fee simple by the Association . . . subject to [approval by any mortgagees of the property]." Also, § 2.6 provides that the community association can "transfer part of the Common Area to or at the direction of the [developer] for the purpose of adjusting Lot lines or otherwise in connection with the orderly subdivision and development of the Property." However, if the minimum level of "open space" is reduced by any such transfer, § 2.6 requires the developer to convey to the community association such portion of its property as is necessary to maintain that minimum level of "open space." In our opinion, these provisions clearly gave the community association the right to convey Parcel G-2 to the developer and permitted the developer to convey this land to the Carters, provided that the developer conveyed to the community association other property necessary to maintain the minimum level of "open space," which it did. Thus, we reject the contention that the developer was barred from reacquiring Parcel G-2 and conveying that parcel to

the Carters.

Next, we consider whether the lot owners' easements in Parcel G-2 were perpetual and, therefore, incapable of being extinguished by these conveyances. Looking at the language of the declaration, we note that the easements are described as a "non-exclusive right and easement of use and enjoyment in and to the Common Area . . . ." The declaration does not describe any particular part of the common area, which, under the terms of the declaration, is defined as "all of the Property, other than Lots, then owned or leased by the Association or otherwise available to the Association for the benefit, use and enjoyment of the Owners." And, as we have held, the developer and community association reserved the right under §§ 2.4 and 2.6 of the declaration to exchange and, thereafter, to convey parts of the common area in the orderly subdivision and development of the property, provided that the developer maintained the minimum "open space" of each subdivision of the property.

Accordingly, we do not think that the lot owners' easements are affixed to a particular parcel of land, as the lot owners claim, but can be shifted from time to time to other parcels of land duly conveyed to the community association. Hence, we conclude that the community association and the developer had the right to make this exchange of parts of the common area and to extinguish the lot owners' specific easements in Parcel G-2.

II.

We next consider the lot owners' claim that the evidence that their easements in the balance of Parcel G were affected by the conveyance of Parcel G-2 raised factual issues which could not be resolved on a motion to strike.

First, the lot owners cite the common law rule that a servient owner cannot use his property in such manner as to make the dominant owner's use of an easement less useful or convenient. Willing v. Booker, 160 Va. 461, 466, 168 S.E. 417, 419 (1933). However, as the Carters note, the lot owners acquired their easements in Parcel G subject to the provisions of §§ 2.4 and 2.6 of the declaration giving the servient owners the right to transfer the lot owners' easements in one part of the common area to another part of the common area. And the lot owners introduced no evidence comparing the relative usefulness and convenience of Parcel G and the substituted part of the common area.[3] Accordingly, the lot owners failed to carry their burden of showing that their use of the substituted part of the common area was less convenient or useful than their use of Parcel G or its remainder after the conveyance of Parcel G-2.

_____

[3]In describing another part of the common area, Roger Dressler, a lot owner, testified that "one other strip of land that's off Amelia Drive [was] behind some other houses, and . . . inaccessible by us," but he did not identify that strip of land as the substituted part of the common area.

Next, the lot owners rely upon § 15.1(3) of the declaration. Section 15.1(3) deals with the developer's unilateral right to "relocate boundary lines between the Common Area and any Lots or among any Lots; provided, however, that such relocation does not materially and adversely affect any Owner other than the [developer] and that such relocation is reflected in an approved resubdivision of all or any part of the Property."  The lot owners claim that their evidence raised a factual issue whether their easements in Parcel G were "materially and adversely affected."

The difficulty with this claim is twofold.  First, § 15.1(3) deals only with the developer's unilateral right to relocate lot boundaries.  Here, there is no relocation of boundary lines, particularly those of the complaining lot owners, but a conveyance of a part of the common area.  Second, as we have noted earlier, the lot owners introduced no evidence addressing the relative usefulness or convenience of their easements in the former and substituted parts of the common area.  Hence, we find no merit in the lot owners' contention.

Accordingly, we will affirm the final decree of the chancellor.

Affirmed.