# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Genito Glenn, L.P.

v.

National Housing
Building Corp. et al.

May 14, 1999

Case No. (Law) CL98-2847

BY JUDGE H. THOMAS PADRICK, JR.

This matter is before the court on Defendants' demurrers to Plaintiff, Genito Glenn's ("Plaintiff's" or "Genito's") amended motion for judgment. Genito seeks recovery in excess of ten million dollars for damages allegedly sustained when certain fill material applied during the construction of its multi-family housing project expanded causing the foundations in the dwellings to crack. This swelling ultimately rendered the dwellings uninhabitable. As a consequence, the apartments will have to be demolished, the filler removed, and the project rebuilt.

Plaintiff seeks to impose its costs on several parties, beginning with the general contractor, Defendant National Housing Building Corp. ("NHBC"). Genito also filed suit against Defendant S. W. Rogers, Inc. ("Rogers"), the subcontractor responsible for the site development work, i.e., excavation, soil distribution, and the filling and grading of the project. In addition, Genito filed suit against Defendant Timmons, Inc. ("Timmons"), the firm responsible for developing the plans and site specifications, and Defendant Peter J. Fanara, a professional engineer employed by Timmons to perform the engineering

work for the project. Finally, Genito named ReUse Technology, Inc., ("ReUse") and Cogentrix of Richmond, Inc., ("Cogentrix") as defendants in the action. ReUse markets and sells a product known as "Xtra Fill," the fill material which allegedly caused the damage described above. Xtra Fill is a trade marked, by-product of the coal combustion process known as "fly ash." If properly processed and applied, fly ash can apparently be used as fill material. However, if the ash is not properly processed, it can absorb moisture for up to 800 days, resulting in severe swelling. Cogentrix supplied the fly ash to ReUse pursuant to a contract between the two parties, whereby ReUse agreed to remove the ash which it intended to resell as fill material.

Plaintiff alleges a host of theories in support of its amended motion for judgment. All of the defendants, except NHBC, filed demurrers attacking the respective counts which applied to them. In the interest of logic, the court has not necessarily addressed the various counts in the sequence in which they are raised in the amended motion for judgment.

Several of the Defendants have also filed cross-claims. I will address the demurrers to these cross-claims in Parts II and III of this opinion following my discussion of the issues raised in Genito's amended motion for judgment.

## Standard of Review

In ruling on a demurrer, the court is required to view the facts in the light most favorable to the plaintiff to determine whether the pleading states a valid cause of action. *W. S. Carnes, Inc. v. Board of Supervisors of Chesterfield County*, 252 Va. 377, 384 (1996). The only issue before the court is the legal sufficiency of the pleading. *Id.*

## Legal Analysis

### I. *Demurrers to Genito's Amended Motion for Judgment*

#### A. *Counts IV, VIII, IX, and XII (Negligence as to Rogers, Timmons and Fanara, ReUse, and Cogentrix)*

In Counts IV, VIII, IX, and XII of its amended motion for judgment, Genito avers that Rogers, Timmons, Fanara, ReUse, and Cogentrix all negligently failed to perform certain duties in the various planning and construction stages of the project. (Amended MFJ ¶¶ 19, 23, 24, 27.) In each count, Genito also alleges that Defendants owed these duties to Plaintiff "separate and apart" from any contract. Defendants respond that Genito is

merely attempting to transform its cause of action *ex contractu* into a negligence claim in order to circumvent the economic loss rule.

Simply put, the economic loss rule prevents a party from recovering economic damages in tort upon a theory of negligence absent privity of contract. *Blake Construction Co. v. Alley*, 233 Va. 31 (1987). Nowhere does Genito allege that it was in privity of contract with either Rogers, Timmons, Fanara, ReUse, or Cogentrix. Thus, the only issue is whether Genito's claims are for economic damages alone or whether they can be characterized as personal injury or property damages. See Va. Code § 8.01-223.

The leading cases is *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419 (1988). The dispute there arose when a homeowner contracted with a builder to construct a new home which was to include an indoor swimming pool. The builder in turn contracted with a designer, who agreed to draw up the plans for the project, and a pool contractor who agreed to build and install the pool. The homeowners alleged that the pool was built on fill rather than natural soils which caused the water pipes to break. The escaping water caused erosion under the pool and part of the foundation of the house, resulting in cracking in the foundation. *Id.* at 422. Contending that the losses were for damage to property, the homeowners sought damages in negligence from the architect and the pool contractor for the cost of repairing their home. *Id.* at 423.

The *Sensenbrenner* court, however, ruled that damages for diminution in value, measured by the cost of repair, were purely economic losses. *Id.* at 425. In analyzing the character of the loss, the court recognized that "when a product 'injures itself' because one of its component parts is defective, a purely economic loss results to the owner for which no action in tort will lie." *Id.* at 424 (quoting *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858 (1986)). In defining the standard for judging the character of the loss, the court gave the following explanation.

> The controlling policy consideration underlying tort law is the safety of persons and property from losses resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for. If that distinction is kept in mind, the damages claimed in a particular case may more readily be classified between claims for injuries to persons and property on one hand and economic loss on the other.

*Sensenbrenner*, 236 Va. at 425. Applying these principles, the court continued:

> The plaintiffs here allege nothing more than disappointed economic expectations. They contracted with a builder for the purchase of a package. That package included land, design services, and construction of a dwelling. The package also included a foundation for the dwelling, a pool, and a pool enclosure. The package is alleged to have been defective — one or more of its component parts was sufficiently substandard as to cause damage to other parts. The effect of the failure of the substandard parts to meet the bargained for level of quality was to cause a diminution in the value of the whole, measured by the cost of repair. This is a purely economic loss, for which the law of contracts provides the sole remedy.

*Id.*

The principles set forth in *Sensenbrenner* likewise control the disposition of Counts IV, VIII, IX, and XII in this case. Genito contracted with NHBC for the construction of a multi-family housing project. In addition to the design and construction of the apartment dwellings, the project also called for certain site work to be done and for the application of suitable fill material. According to Genito's allegations, however, the Xtra Fill was substandard and did not meet its bargained for expectations regarding quality and suitability. As a result of the allegedly defective Xtra Fill, Genito alleges that the foundations of the dwellings cracked, making the dwellings unstable and ultimately uninhabitable. In an effort to retain its tax credits, Genito now seeks to recover the costs associated with removing the defective fly ash and rebuilding the project. This is precisely the problem encountered by the court in *Sensenbrenner*. The damages Genito claims are purely economic losses; as such, it is limited to seeking recovery for these losses from NHBC, with whom it was in privity of contract.

The court therefore sustains Defendants' demurrers with respect to Counts IV, VIII, IX, and XII of Genito's amended motion for judgment and those counts are dismissed.

### B. Count III (Breach of Express and Implied Warranty as to NHBC, Rogers, ReUse, and Cogentrix)

#### 1. Express Warranty Claims as to Rogers, ReUse, and Cogentrix

In Count III of its Amended Motion for Judgment, Genito alleges various express and implied warranty claims against the several Defendants. The first three claims at issue are the express warranty claims against Rogers, ReUse, and Cogentrix. As against Rogers, Genito claims that "Rogers expressly

warranted that its work, including materials used in the work, would be in accordance with the plans and specifications, that labor would be performed in a good and workmanlike manner … and that its work would be free from defective materials and workmanship." (Amended MFJ ¶ 15.) As against ReUse, Genito avers that ReUse "expressly warranted that the fly ash provided for the project was approved by the Virginia Department of Transportation ("VDOT") and was safe and suitable as a fill material." (Amended MFJ ¶ 16.) Finally, as against Cogentrix, Plaintiff alleges that ReUse made express warranty claims about the fly ash on behalf of Cogentrix. (Amended MFJ ¶ 16.)

In judging the validity of these claims, the court must first determine whether the contracts between NHBC and Rogers, between Rogers and ReUse, and between ReUse and Cogentrix were contracts primarily for the sale of goods or contracts for the provision of services. If the contracts were primarily for the provision of services, then the discussion in Part I(A) of this opinion applies, and the claims must be dismissed as to Rogers, ReUse, and Cogentrix because Genito cannot establish privity of contract. On the other hand, if the contracts were primarily for the sale of goods, then the court must confront Va. Code § 8.2-318, which provides in pertinent part:

> Lack of privity between plaintiff and defendant shall be no defense to any action brought against the manufacturer or seller of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods[.]

Note, there is obviously a serious question whether the agreement between NHBC and Rogers can be classified as an agreement for the sale of goods (the agreements between Rogers and ReUse and between ReUse and Cogentrix would almost certainly be classified as contracts for the sale of goods). Nonetheless, the court has assumed that this is the case since Genito's claim against Rogers has no chance of recovery if the NHBC-Rogers agreement is classified as a contract for the provision of services. See Part I(A) *infra*. Note also, this assumption is consistent with the court's conclusion reached in Part II(C)(2) below.

The leading case discussing the effect of Va. Code § 8.2-318 on the privity requirement is *Beard Plumbing & Heating v. Thompson Plastics*, 254 Va. 240 (1997). There, the court held that § 8.2-318 does not abrogate the privity requirement in the context of an implied breach of warranty claim for

consequential economic damages. *Id.* at 246. In arriving at its conclusion, the court found that another section of the U.C.C. § 8.2-715(2), trumped § 8.2-318. Section 8.2-715(2) provides in pertinent part:

> Consequential damages resulting from a seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller *at the time of contracting* had reason to know and which could not reasonably be prevented by cover or otherwise; and (b) injury to person or property proximately resulting from any breach of warranty.

(Emphasis added.) The court reasoned that the specific language "at the time of contracting" in § 8.2-715(2) prevailed over the more general provisions of § 8.2-318. Thus, the court held that the statute "requires a contract between the parties for the recovery of consequential economic loss damages incurred as a result of a breach of warranty by the seller." *Beard*, 254 Va. at 245. However, it is important to recognize that *Beard* does not address the effect of the privity requirement in warranty cases involving *direct* economic damages. See *id.* at 244. Further, unlike § 8.2-715(2), Va. Code § 8.2-714,[1] which deals with direct damages for a seller's breach, does not contain any reference to a privity requirement. Applying an analysis similar to that used by the *Beard* court, this court concludes that a plaintiff can still recover direct economic damages in a warranty case regardless of privity of contract.

The *Beard* case was admittedly decided in the context of a claim for economic damages resulting from a breach of an *implied* warranty of merchantability. But it is difficult to conceive that *Beard* could be read to permit a claim for economic damages in an express warranty case absent privity of contract. This is because § 8.2-715(2) imposes a contract requirement in "any" case where a party seeks recovery of a consequential economic loss. See *Beard*, 254 Va. at 246. Thus, even assuming that the

---

[1] The text of Va. Code § 8.2-714 reads as follows:

"(1) Where the buyer has accepted goods and given notification (subsection (3) of § 8.2-607), he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(3) In a proper case, any incidental and consequential damages under the next section [§ 8.2-715] may also be recovered."

contracts between the parties were primarily for the sale of goods, Genito cannot maintain its claims for breach of express warranties insofar as it seeks recovery for consequential economic losses because it has not alleged privity of contract. Accordingly, this aspect of Count III is hereby dismissed. As explained above, however, there is no privity requirement for recovery of direct economic losses in warranty cases. Accordingly, Defendants' demurrers to this aspect of Count III are overruled.[2]

### 2. Implied Warranty Claims as to Rogers, ReUse, and Cogentrix

In addition to its express warranty claims, Genito alleges in Count III that Rogers, ReUse, and Cogentrix "impliedly warranted that such fly ash was of good qualify, free from defects, and fit, safe, and suitable as a fill material for Genito's project." (Amended MFJ ¶ 17.) As with Genito's allegations for breach of express warranties, the court concludes that the disposition of these claims is governed by *Beard*. As discussed above, *Beard* specifically prevents a plaintiff from seeking recovery of consequential economic loss damages on an implied warranty claim absent privity of contract. Therefore, to the extent Genito seeks recovery of consequential economic losses, its implied warranty claims as to Rogers, ReUse, and Cogentrix must also be dismissed. However, Genito may still recover direct economic losses despite the fact that it was not in privity of contract with Rogers, ReUse, or Cogentrix.

### C. Count V (Indemnity as to Rogers)

In addition to the claims discussed in Parts I(A) and I(B) of this opinion, Genito has also asserted an indemnity claim against Rogers. In its contract with NHBC, Rodgers agreed to indemnify and hold harmless NHBC and Genito "from and against claims, damages, losses, and expenses, arising out of or resulting from performance of the Work, to the extent caused in whole or in part by negligent acts or omissions of the Sub-Contractor, or anyone directly or indirectly employed or retained by the Sub-Contractor." (Amended MFJ ¶ 20.)

In response, Rogers raises two points. First, it argues that it had no written agreement with NHBC. Rogers points out that although it had tendered a draft agreement to NHBC, NHBC did not execute and return the draft to Rogers until after problems developed with the Xtra Fill. In ruling on a demurrer, however, this court is bound to view the facts in the light most favorable to the

---

[2] Counsel will observe that the court expresses no opinion as to the validity of any of the warranty claims against NHBC since it did not file any demurrers to Plaintiff's amended motion for judgment.

plaintiff. *W. S. Carnes*, 252 Va. at 384. Since Genito has attached the purported agreement to its amended motion for judgment, this court must assume that NHBC and Rogers had in fact entered into a contract regardless of the truth of Rogers' claim.

Second, Rogers argues Count V should be dismissed because the indemnity provision is void as against public policy. In support of its contention, Rogers points to Va. Code § 11-4.1, which provides that:

> [a]ny provision contained in any contract relating to the construction ... of a building, structure or appurtenance thereto, including moving, demolition, and excavation connection therewith ... by which the contractor performing such work purports to indemnify or hold harmless *another party to the contract* against liability for damages arising out of bodily injury to persons or damage to property suffered in the course or performance of the contract, caused by or resulting solely from the negligence *of such other party* ... is against public policy and is void and unenforceable.

(Emphasis added.) The short answer to Rogers' argument is that this section invalidates only those indemnity provisions which run in favor of a party to the contract. It does not, however, invalidate that portion of the agreement by which Rogers agreed to indemnify Genito. Accordingly, Rogers' demurrer to Count V is overruled.

### D. *Third-Party Beneficiary Claims (as against Rogers, Timmons and Fanara, ReUse, and Cogentrix)*

In an apparent effort to make an end run around the privity requirement, Genito alleges that it is a third-party beneficiary of those contracts to which it was not a party. *See* Va. Code § 55-22. Genito further avers that "the parties to such contracts clearly and definitely intended to confer the benefits of such contracts on Genito ... ." (Amended MFJ § 9.) Defendants counter by arguing that Genito's amended motion for judgment does not allege sufficient facts to state a cause of action.

Under Virginia law, a person who is not a party to a contract may nonetheless sue upon the instrument if he can show that he was a beneficiary of the promise. Va. Code § 55-22. It is not enough, however, for the non-party to show that he was merely an incidental beneficiary of the contract. *Valley Landscape Co. v. Roland*, 218 Va. 257 (1977). Rather, the non-party must demonstrate "that the parties to the contract clearly and definitely intended to confer a benefit upon him." *Id.* at 259 (quoting *Professional Realty v. Bender*, 216 Va. 737, 739 (1976)).

In the *Valley* case, Old Dominion University ("ODU" or "the University") filed an action against its general contractor when the contractor failed to complete certain work on the University's mall improvement project. 216 Va. at 258. The contractor in turn sued the architect on the project, alleging that it was a third-party beneficiary of ODU's agreement with the architect. The contract between ODU and the architect was never made a part of the record; and the only allegation in the contractor's motion for judgment which addressed its status as a third-party beneficiary read as follows: "4. That certain provisions of [the architect's] contract with [ODU] were for the benefit of the general contractor." *Id.* at 259. The trial court granted the architect's demurrer and the Supreme Court affirmed, holding that the ODU-architect contract contained no provisions which were intended to directly benefit the general contractor. *Id.* at 260. In reaching its conclusion, the court acknowledged that the contractor might benefit from the plans prepared by the architect. Nonetheless, said the court, this "is an incidental benefit that accrues to the contractor. But it is not the benefit that is primarily envisioned by the architect and the owner." *Id.* at 261.

The court reached the opposite conclusion in *Levine v. Selective Ins. Co.*, 250 Va. 282 (1995). There, the owners entered into an agreement with a contractor to build a house on their property. Included within the agreement was a provision requiring the contractor to purchase hazard insurance to cover any losses associated with personal injury or loss of materials. The contractor subsequently purchased coverage from an insurance firm. When the construction site was damaged and the insurance company refused to pay, the owners filed a motion for judgment against the insurer claiming their rights to the proceeds as third-party beneficiaries. *Id.* at 284-85. In reversing the trial court's grant of summary judgment in favor of the insurer, the court ruled that the owners had pleaded sufficient facts in their motion for judgment to establish a third-party beneficiary claim. *Id.* at 286. The court noted that although the owners were not named as the payees on the policy, "all parties expressly understood that the beneficiaries of the policies were the [owners]." Moreover, when the insurer decided to cover a portion of the damage, the check was made payable to the order of contractor and the owners. Finally, the owners in *Levine* alleged that, at all times, the insurer had actual notice that they were third-party beneficiaries under the agreement between the contractor and the insurer. *Id.*

Had Genito sought merely to rely on the factual allegations contained in its amended motion for judgment, this court would be constrained to hold that Genito has not stated a valid cause of action. Genito's amended motion contains the bare allegation that the parties to the other contracts "clearly and

definitely intended to confer the benefits of such contracts on Genito ... ." This allegation simply restates the legal standard set forth in *Valley* and *Levine* and does not set forth any specific facts in support of Genito's claim.

However, this court must also consider the contracts attached to Genito's amended motion in determining whether it has stated a valid third-party beneficiary claim against any of the defendants. As set forth above, paragraph 14 of the NHBC-Rogers agreement contains an indemnity provision whereby Rogers agreed to "indemnify and hold harmless" NHBC and Genito "from and against all claims, damages, losses, and expenses arising out of or resulting from the performance of the Work, to the extent caused by the negligent acts or omissions of the Sub-Contractor ... ." (Amended MFJ Exhibit B.) By its express terms, this indemnity provision runs in favor of Genito. The agreement thus evidences a clear intent on behalf of NHBC and Rogers to benefit a person who was not a party to the contract.[3]

The NHBC-Timmons contract, on the other hand, is insufficient to support Genito's attempt to claim third-party beneficiary status. Aside from sundry captions throughout the contract which indicate that the document pertains to the Genito project, there is absolutely no indication on the face of the contract that the parties intended to benefit Genito. Rather, the language in the agreement specifies certain work that Timmons was obligated to perform; and as a return consideration, NHBC agreed to pay Timmons upon performance of its obligations.

To be sure, Genito would have undoubtedly enjoyed the benefits of Timmons' work. But as in the *Valley* case, the benefits to Genito are merely incidental. The primary purpose behind the contract between NHBC and Timmons was to allow NHBC to farm out a particular portion of the project (i.e., the design and engineering work relating to the site development) to Timmons, which was better suited to perform the work. This is utterly different from the *Levine* case, where the principal purpose behind the agreement between the builder and the insurer was to relieve the owners from the risk of loss associated with damage to persons or materials on their property, and where all the parties "expressly understood" that the insurance was purchased for the benefit of the owners.

---

[3] At oral argument, counsel for Rogers argued that the primary purpose of the indemnity provision was to allow NHBC to perform its contract with Genito. Thus, the argument runs, since Genito was only an incidental beneficiary of Rogers' promise, it is not entitled to sue thereon. In essence, counsel is asking this court to view the allegations in the light most favorable to Rogers. The court declines Rogers' invitation.

Genito cites *Ward v. Ernst & Young*, 246 Va. 317 (1993), for the proposition that this court is not limited to considering the four corners of the NHBC-Timmons contract in determining whether the parties clearly and definitely intended to confer a benefit upon Genito. The *Ward* case, however, was decided in the context of a motion to strike, where the court was bound to consider the *evidence* and the inferences reasonably deducible therefrom in the light most favorable to the non-moving party. *See id.* at 330. Here, the court is limited to considering the pleadings and any exhibits attached thereto in determining whether Genito has stated a valid third-party beneficiary claim. And there are no facts in Genito's amended motion or the NHBC-Timmons contract which suggest that the parties clearly intended to confer a benefit upon Genito.

Accordingly, with the exception of the third-party claim against Rogers, the court sustains Defendants' demurrers to this aspect of Genito's amended motion for judgment, and those matters are dismissed.

E. *Count VI (Constructive Fraud as to Rogers, Timmons, and Fanara) and Count VII (Actual and Constructive Fraud as to ReUse and Cogentrix)*

1. *Count VI (Constructive Fraud as to Rogers, Timmons, and Fanara)*

In another effort to circumvent the economic loss rule, Genito alleges in Count VI of its amended motion that "Rogers, Timmons, and Fanara represented by NHBC, knowing and intending that such representations reach and be relied on by Genito, that fly ash in general and Xtra Fill in particular was a safe, suitable, proper fill material." (Amended MFJ ¶ 21.) Genito further alleges that the representation was "false" and "material," was "made with the intention that NHBC and Genito rely upon it," and that Genito and NHBC in fact relied on the representations to their detriment.

As with its claims for negligence in Counts IV, VIII, IX, and XII, however, Genito's claims for constructive fraud are barred by the economic loss rule. Genito argues that the economic loss rule does not preclude its claims for constructive fraud and points to a footnote in the *Ward* case, wherein the court made the following statement:

These observations cannot fairly be interpreted to mean that economic losses are never recoverable in tort. The language employed here has its predicate in the tort alleged in the Association's *negligence* count; it does not purport to foreclose a right to recover an economic loss in other tort actions such as those for fraud, conspiracy to injure another

in a trade, business, or profession, or tortious interference with contract.

*Id.* (emphasis in original).

The footnote in *Ward*, however, should not be interpreted to mean that all claims for fraud are permissible in spite of the economic loss rule. Tort actions for conspiracy to injure another in a trade or business and tortious interference with contract both require the claimant to prove the element of intent. *See Commercial Bus. Sys. v. BellSouth Servs.*, 249 Va. 39 (1995) (conspiracy tort requires that defendant acted intentionally, purposefully, and without legal justification); *Commercial Bus. Sys. v. Halifax*, 253 Va. 292 (1997) (tortious interference with business relations requires proof of intentional misconduct). Likewise, a claim for actual fraud requires proof that the defendant intended to mislead the claimant. *Evaluation Research Corp. v. Alequin*, 247 Va. 143 (1994). The essence of constructive fraud, on the other hand, is negligent misrepresentation. *See Mortarino v. Consultant Engineering Servs.*, 251 Va. 289 (1996). It requires neither a showing of malice nor an intent to deceive. *Id.* at 295. Thus, since constructive fraud is simply another species of negligence, it follows that the economic loss rule also forecloses Genito's claims in Count VI.

Yet, even if this court were to hold that the economic loss rule did not apply, Count VI of Genito's amended motion lacks the specific factual allegations necessary to assert a claim for constructive fraud. A party asserting a claim for actual fraud must establish the following elements by clear and convincing evidence: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting damage to the party misled. *Evaluation Research Corp.*, 247 Va. at 148. As explained above, the difference between actual fraud and constructive fraud is in the element of intent. Whereas the former requires a showing that the misrepresentation was made with the intent to mislead, the latter merely requires the claimant to show that the misrepresentation is made innocently or negligently. *Id.* at 148. As with actual fraud, a claim for constructive fraud must be established by clear and convincing proof. *Id.* More importantly, Virginia courts have consistently emphasized that "[w]here fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defense accordingly ... ." *Mortarino*, 251 Va. at 295 (quoting *Ciarochi v. Ciarochi*, 194 Va. 313, 315 (1952)).

Here, Genito's allegations in Count VI are too vague and conclusory to state a cause of action. Count VI fails to allege any of the circumstances

relating to the fraud, including which officers and employees of Rogers or Timmons allegedly made the misleading statements, when the statements were made, or how the statements were communicated from either Rogers or Timmons to NHBC, and then to Genito. *See Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849 (1978).

For both these reasons, the demurrers to Count VI are sustained, and leave to amend is denied

### 2. *Count VII (Actual and Constructive Fraud as to ReUse)*

The court's conclusion in the previous section regarding the impact of the economic loss rule on the claims in Count VI applies with equal force here to bar Genito's claims against ReUse for constructive fraud. The allegations in Count VII of actual fraud, however, are more problematic. Here, Genito alleges that prior to contracting with Rogers to supply Xtra Fill for the project, A. Sidney Buford of ReUse made several specific misrepresentations to Rogers regarding the suitability of fly ash as fill material. Genito then goes on to allege that the representations were false, material, and were known by ReUse to be false when they were made, or alternatively, that ReUse made the statements without knowledge of their truth or falsity. Genito also avers that ReUse knew and intended that the statements would be communicated and relied on by NHBC and Genito. (Amended MFJ ¶ 22.)

Citing *Richmond Met. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553 (1998), ReUse argues that Genito may not recover for fraud based upon duties which existed solely by reason of a contractual relationship. In *McDevitt*, the Richmond Metropolitan Authority contracted with McDevitt to build a baseball stadium. In order to receive progress payments during the construction, the contractor submitted several sworn applications indicating that certain work had been completed. When the Authority discovered that the work had not in fact been performed, it filed suit against the contractor for actual and constructive fraud. *Id.* at 555-56. In affirming the trial court's dismissal of the claims, the court held that the duties and obligations required of the contractor were imposed by virtue of contract, not by tort law. *Id.* at 559. Thus, the court concluded that the Authority could not base its recovery on a cause of action for fraud. *Id.*

ReUse's reliance on *McDevitt*, however, is misplaced. Genito is not alleging that ReUse fraudulently breached any of the duties it owed to Rogers as a result of the contract of sale between the two parties. Such an allegation would clearly be demurrable under the facts of *McDevitt*. Rather, Genito is alleging that ReUse, through its misrepresentations, fraudulently induced Rogers to enter into a contract for the supply of defective fill material. The

duty to refrain from making misrepresentations in an effort to procure a contract is a duty imposed by common law. This duty exists separate and independent of any of the duties imposed under the contract between Rogers and ReUse; and assuming Genito can establish a *prima facie* case, it is a ground for recovery of damages. *See George Robberecht Seafood, Inc. v. Maitland Bros. Co.*, 220 Va. 109, 111-12 (1979) (stating the elements for fraudulent inducement).

Of more pressing concern, though, is Genito's allegation that it relied on the representations made by ReUse employees. In order to establish a claim for fraud, "it is essential that the defrauded party demonstrates the right to reasonably rely upon the misrepresentation." *Metrocall of Delaware, Inc. v. Continental Cellular Corp.*, 246 Va. 365, 374 (1993). As explained above, Genito's claim against ReUse in Count VII is essentially one for fraudulent procurement of its contract with Rogers. Genito also alleges that the misrepresentations were communicated to NHBC and Genito. The problem, though, is that the decision to enter into the agreement for the supply of fill material belonged to Rogers, not Genito. In other words, how could Genito have relied on the statements unless it had the right to take some sort of action (i.e., deciding whether to enter into the supply contract) which could have accrued to its detriment?

The contract between Genito and NHBC provides one possible answer.[4] The following language appears in Article 6.2.1 of the contract:

> Prior to the execution of any subcontract and the commencement of Work, [NHBC] shall submit to [Genito] and the Bank the names of each Subcontractor (including persons or entities who are to furnish materials or equipment fabricated to a special design) to whom [NHBC] proposed to subcontract any part of the Work, together with such information as [Genito], Architect, or the Bank may request with respect to the qualifications and ability of each such Subcontractor to perform the Work. *[NHBC] shall not subcontract any work to a Subcontractor with regard to which [NHBC] has received written notice of objection from [Genito]* ... .

(Amended MFJ Exhibit A; emphasis added.) This provision clearly gives Genito the right to reject a proposed "Subcontractor" because of concerns about the subcontractor's "qualifications and ability." Moreover, if the phrase "qualifications and ability" is broadly construed, it is conceivable that Genito

---

[4] As noted previously, the contract was attached to Genito's amended motion for judgment.

could have objected to NHBC's decision to enter into its subcontract with Rogers on grounds that Rogers intended to use fly ash as fill material. But Genito does not complain about NHBC's decision to enter into its subcontract with Rogers. Rather, the gravamen of Count VII is that ReUse fraudulently procured its contract with Rogers. And although Genito had the right to object to NHBC's decision to enter into a subcontract with Rogers, the agreement does not purport to give Genito veto power over the subcontractor's agreements with its sub-subcontractors (the position occupied by ReUse).[5] Absent the ability to object to Rogers' decision to purchase fly ash from ReUse, it is difficult to understand how Genito had the right to rely on ReUse's representations.

As indicated above, Genito might be able to show reliance if it alleged either (1) that it would have refused to enter into the contract with NHBC, or (2) that it would have objected to NHBC's decision to enter into a subcontract with Rogers. In order to establish such a claim, though, Genito must allege specific facts relating to the purported fraud. Genito avers merely that the representations were communicated from ReUse to Rogers and then to NHBC and Genito and that Genito subsequently relied on the statements. The amended motion for judgment says nothing about the circumstances under which the statements were communicated from Rogers to NHBC and then to Genito, including the times and the individuals who allegedly relayed the information to Genito, and, most importantly, what action Genito took in reliance on the statements.

Accordingly, Genito's claims against ReUse for actual and constructive fraud are hereby dismissed.

### 3. *Count VII (Actual and Constructive Fraud as to Cogentrix)*

In addition to its allegations against ReUse in Count VII of its amended motion, Genito also states that the "misrepresentations were made with the knowledge, approval, encouragement, and authority of Cogentrix of Richmond and were ratified by Cogentrix ... ." (Amended MFJ ¶ 22.) Genito's claims against Cogentrix for actual and constructive fraud, however, fare no better than its allegations against ReUse.

---

[5] Pursuant to Article 6.1.1, the term "Subcontractor" means "a person or entity who has a direct contract with [NHBC] to perform any of the Work at the site ... The term Subcontractor *does not* include any separate contractor or his subcontractors." The term "Sub-subcontractor" means "a person or entity (other than the Contractor or a Subcontractor) who has a contract to perform any of the Work at the site." (Amended MFJ Exhibit A, ¶ 6.1.1.) (Emphasis added.)

As discussed twice previously, the economic loss rule prohibits Genito from attempting to sidestep the privity requirement through a claim in constructive fraud. Moreover, apart from its allegation that Cogentrix ratified the misleading statements, Genito sets forth absolutely no facts to support either of its claims against Cogentrix. Genito's claims against Cogentrix for actual and constructive fraud are therefore dismissed.

F. *Count X (Nuisance as to NHBC, Rogers, ReUse, Cogentrix, Timmons, and Fanara)*

In Count X of its amended motion for judgment, Genito alleges that Defendants created a nuisance on its property through "their various breaches, acts, and omissions" in applying the Xtra Fill. For their part, Defendants advance various arguments, all in an attempt to show that Genito has not properly pleaded a claim for nuisance.

A private nuisance is the using, or authorizing the use of, one's property, or of anything under one's control, so as to injuriously affect an owner or occupier of property (1) by diminishing the value of that property; (2) by continuously interfering with his power of control or enjoyment of that property; [or] (3) by causing material disturbance or annoyance to him in his use or occupation of that property." *Bowers v. Westvaco Corp.*, 244 Va. 139, 148 (1992) (quoting *Virginian Railway Co. v. London*, 114 Va. 334, 344-45 (1912)). Indeed, the term nuisance encompasses a broad range of conduct, including "everything that endangers life or health, or obstructs the reasonable and comfortable use of property." *National Energy Corp. v. O'Quinn*, 223 Va. 83 (1982).

Count X of Genito's amended motion, however, suffers from a more fundamental defect. Through artful pleading, Genito has attempted to transform what is essentially a breach of contract case into a tort action. *See McDevitt*, 256 Va. at 558-59. Although the Supreme Court has recognized that in certain instances a party can show both a breach of contract and a tortious breach of duty, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Id.* at 558 (quoting *Foreign Mission Bd. v. Wade*, 242 Va. 234, 241 (1991)). In determining whether a cause of action sounds in contract or in tort, the *McDevitt* court enunciated the following standard:

If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists), then the action is

founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of the contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Id.* at 558.

Applying these principles to the facts in the instant case, it is clear that Genito's nuisance count should be dismissed. It is undoubtedly true that every landowner has a duty not to engage in activities that might interfere with his neighbors' use and enjoyment of their property. *See Bowers*, 244 Va. at 144. But the breach that Genito complains of grew not out of any general duty founded in the common law, but the duties specifically outlined in the sundry contracts among the various parties. Indeed, were it not for Genito's general contract with NHBC and NHBC's agreements with Rogers and Timmons, the fly ash never would have been deposited onto Genito's property in the first place. Accordingly, the court sustains Defendants' demurrers to Count X of Genito's amended motion for judgment,[6] and Count X is therefore dismissed.

### G. Count XI (Trespass as to NHBC, Rogers, ReUse, Cogentrix, Timmons, and Fanara)

Finally, in Count XI, Genito charges that the application of the defective fill material was unauthorized and that the defendants who "participated in, approved, directed or encouraged" its application are therefore liable in trespass. (Amended MFJ ¶ 26.) Defendants respond that Count XI must be dismissed because their entry onto Genito's land was not "unauthorized."

The allegations in Count XI suffer from the same defect that plagues Count X. As with Count X, the breach that Genito complains of is a product of its contract with NHBC and of NHBC's agreements with its subcontractors. Were it not for the various contracts, Defendants would never have been authorized to deposit the fly ash onto Genito's property.

In any event, the contracts make it impossible for Genito to allege a cause of action in trespass. "A trespass is an unauthorized entry onto property which results in interference with the property owners' possessory interest therein." *Cooper v. Horn*, 248 Va. 417 (1994) (quoting 5 Richard R. Powell, *The Law of Real Property*, Para. 707 (Patrick J. Rohan, ed., 1994)). Even viewing the allegations in the light most favorable to Genito, it does not appear that there was any unauthorized entry. Indeed, Genito concedes on brief that it not only

---

[6]    Neither the discussion in this Part nor the discussion in Part I(G) applies to NHBC since it failed to file any demurrers to Genito's amended motion for judgment.

authorized Defendants to enter onto its property, but that it consented to the application of the Xtra Fill.

Genito nonetheless maintains that even if Defendants were initially authorized to enter onto its property to apply the fly ash, they exceeded the scope of their authority because of their negligent conduct and therefore became trespasses *ab initio*. It is true, of course, that a person who lawfully enters onto another's property may subsequently exceed the scope of his authority by his wrongful conduct, thereby making him a trespasser. *See McClannan v. Chaplain*, 136 Va. 1 (1923). But this is altogether different from attempting to collect damages in trespass when the plaintiff has consented to the very actions alleged to constitute the wrongful conduct. *See Vicars v. First Va. Bank*, 250 Va. 103 (1995). Further, this court has not uncovered any cases which suggest that Genito may authorize Defendants to enter onto its property to apply the fly ash and then declare that prior entry to be a trespass when it subsequently discovers that the product did not perform as expected.

Accordingly, the court sustains Defendants' demurrers to Count XI of Genito's amended motion for judgment, and it is dismissed.

## II. *Demurrers to NHBC's Amended Cross-Claims*

### A. *Count II (Negligence of Timmons)*

Following Genito's filing of its amended motion for judgment, NHBC filed an amended cross-bill against Rogers, Timmons, and ReUse. In Count II of its amended pleading, NHBC alleges that pursuant to its contract with Timmons to provide the geotechnical engineering expertise on the project, Timmons was required to make recommendations for site grading, foundation design, and recommendations concerning the suitability of fly ash for use as structural fill material. (Amended Cross-Claim ¶¶ 9, 17.) Count II goes on to allege that Timmons negligently failed to inform NHBC that fly ash had the potential for swelling, failed to perform any swell tests on the fly ash it had approved for use on the project, and that these failures caused damage to NHBC's work. (Amended Cross-Claim ¶¶ 31-34.) Timmons responds that Count II is deficient as a matter of law because any duties it owed to NHBC arose out of the parties' contract rather than common law negligence principles.

As explained in Parts I(E) and (F), Virginia law generally forbids a claimant from attempting to transform a cause of action *ex contractu* into a tort claim where the duties between the parties arise solely by virtue of contract. *See McDevitt*, 256 Va. at 558. The rule is apparently different in cases

involving economic damages where there is privity of contract; though, the Supreme Court has not explained why this should be so.

The court first addressed the issue in *Rotonda Condo. Owners Assoc. v. Rotonda Assoc.*, 238 Va. 85 (1989). The *Rotonda* case is important because there was arguably privity of contract between the parties and because the plaintiff, in addition to its contract claim, was seeking to recover purely economic damages based upon a negligence theory. *See id.* at 86-87. The court ultimately decided the *Rotonda* case based on principles of standing. Nonetheless, at the foot of its opinion, the court noted that the trial court had correctly dismissed the plaintiff's count for negligent repairs. Citing *Sensenbrenner*, the court stated that plaintiff's claims for "economic losses are not recoverable in tort; they are purely the result of disappointed economic expectations. The law of contracts provides the sole redress for such claims." *Rotonda*, 238 Va. at 90.

This language is consistent with the general rule set forth in the *McDevitt* case, and following *Rotonda*, several circuit courts interpreted it to mean that even where a party asserts privity of contract, the sole redress for economic damages is in the law of contracts. *See Pender Veterinary Clinic v. Patton, Harris, Rust & Assoc.*, 23 Va. Cir. 106 (Fairfax 1991) (Stevens, J.); *P & T Assoc. v. Paciulli, Simmons and Assoc.*, 27 Va. Cir. 405 (Richmond 1992) (Johnson, J.). Yet, despite the relatively clear implication of its language in *Rotonda*, the court took the opposite view in a footnote in *Ward v. Ernst & Young*, 246 Va. 317 (1993). In *Ward*, there was no privity of contract between the parties, so the footnote is obviously dicta. Nonetheless, the court noted that a fair reading of the language in *Rotonda* meant that "when privity exits, economic losses may be recovered under a negligence theory." *Id.* at 326, n. 3.

It is difficult to understand how one might attempt to reconcile the footnote in *Ward* with the general rule set forth in *McDevitt*. Yet, given the clarity of the court's statement in *Ward*, this court will overrule Timmons' demurrer and allow NHBC to proceed on both a contract and negligence theory.

### B. *Count III (Indemnity against Rogers)*

In Count III, of its amended cross-claim, NHBC avers that it entered into a contract with Rogers, whereby Rogers agreed to provide "the material and construction method to create the pads for the buildings which are the subject of [Genito's] amended motion for judgment." (Amended Cross-Claim ¶ 36.) In addition to the various other contractual duties which Rogers allegedly breached, the amended cross-claim also asserts that Rogers is liable in

indemnification to NHBC. As outlined in Part I(c) above, Rogers agreed to indemnify and hold harmless NHBC "from and against all claims, damages, losses, and expenses arising out of or resulting from performance of the Work, to the extent caused in whole or in part by negligent acts or omissions of the Sub-Contractor, or anyone directly or indirectly employed or retained by the Sub-Contractor." Once again, Rogers insists that Va. Code § 11-4.1 renders the indemnity provision unenforceable.

Section 11-4.1 does no such thing. That section renders unenforceable only those agreements which attempt to force the sub-contractor to indemnify the contractor for damages arising solely from the negligence of the *contractor* or the *contractor's* agents or employees. Section 11-4.1, however, says nothing about an agreement whereby a sub-contractor agrees to indemnify a contractor for damages arising out of the *sub-contractor's* negligence or the *sub-contractor's* breach of contract.

The indemnification provision in the NHBC-Rogers contract clearly falls within the latter category of cases. Accordingly, Rogers' demurrer to Count III of NHBC's amended cross-claim is overruled.

C. *Counts IV and V (Breach of Express and Implied Warranties against Rogers)*

1. *Breach of Express Warranties by Rogers*

In Count IV, NHBC avers that Rogers expressly warranted that the fly ash was appropriate for use as structural fill material. NHBC further alleges that Rogers breached the express warranty because the fly ash had a high potential for swelling and therefore was not suitable for use as fill material. (Amended Cross-Claim ¶¶ 53-57.) Rogers argues, however, that NHBC cannot claim any breach of express warranties because the contract was primarily for the provision of services and the U.C.C. only applies to contracts for the sale of goods.

It almost goes without saying that the U.C.C. applies only to contracts for the sale of goods, see Va. Code § 8.2-102, and that the implied warranties in Article 2 therefore apply only to contracts for the sale of goods. See Va. Code §§ 8.2-314, 8.2-315. But there is nothing in Virginia's U.C.C. which purports to limit a party's ability to give an express warranty simply because the contract is for services. In other words, the issue whether the contract was for the sale of goods or for the provision of services is irrelevant to NHBC's ability to collect damages from Rogers on an express warranty theory. Rogers' demurrer to Count IV is therefore overruled.

## 2. *Breach of Implied Warranty by Rogers*

In a related argument, NHBC alleges that Rogers "impliedly warranted that the product supplied as structural fill was merchantable," and that because the fly ash was not suitable as fill material, Rogers therefore breached its implied warranty of merchantability. (Amended Cross-Claim ¶¶ 58-62.) Rogers counters with the same argument it raised with respect to NHBC's express warranty claims, to wit: NHBC cannot claim a breach of any implied warranty because the contract does not fall under the U.C.C.

Although there are no appellate decisions in Virginia which discuss the question of when a mixed contract is predominately for the sale of goods of services, the Fourth Circuit has addressed the issue on at least two occasions. In *Princess Cruises, Inc. v. General Elec. Co.*, 143 F.3d 828 (4th Cir. 1998), *cert. den.* 119 S. Ct. 444 (1998), the court considered the question using the analysis set forth in the seminal case of *Bonebrake v. Cox*, 499 F.2d 951, 960 (8th Cir. 1974):

> The test for inclusion or exclusion is not whether they are mixed but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom).

*Princess Cruises*, 143 F.3d at 833. In determining the nature of the contract, courts have typically considered the following factors: (1) the language of the contract; (2) the nature of the business of the supplier; and (3) the intrinsic worth of the materials. *Coakley & Williams, Inc. v. Shatterproof Glass Corp.*, 706 F.2d 456 (4th Cir. 1983), *cert. den.*, 475 U.S. 1121 (1986).

The *Coakley* case is especially significant because it involved a construction contract where the contractor, a glass company, had agreed "to furnish and install aluminum and glass curtain wall and store front work" on the plaintiff's-owner's building. *Id.* at 457. The case is also instructive because it was decided in the context of the contractor's 12(b)(6) motion to dismiss. In *Coakley*, the owner filed a complaint alleging that the contractor had breached the implied warranties of merchantability and fitness for a particular purpose because the glass had undergone some discoloration. The contractor filed a motion to dismiss, arguing that the U.C.C. warranties did not apply because the contract was primarily for the rendition of services.

In holding that the trial court had incorrectly sustained the contractor's 12(b)(6) motion, the court observed that the agreement required the contractor

to furnish the materials that would form the curtain wall and store front. This fact alone, said the court, "creates an uncertainty to be resolved only by a full factual presentation to determine whether the nature of [the contractor's] business was predominantly the provision of goods or the furnishing of services." *Id.* at 461. The court acknowledged that contractors are typically engaged in the provision of services but refused to impute such a generalization in determining the predominant purpose of the agreement at issue in that case. *Id.* Likewise, the court refused to consider the impact of the second and third factors until the trial court had held an evidentiary hearing. In reaching its conclusion, the *Coakley* court was also quick to point out that it could not find any case where the issue had been disposed of at the 12(b)(6) or demurrer stage. *Id.* at 460.

Applying these principles here, the Court overrules Rogers' demurrer to Count V.

### D. *Count VI (Negligence against Rogers)*

In Count VI, NHBC avers that Rogers determined to use fly ash as filler for the project, that Rogers negligently failed to warn NHBC of the potential for swelling, and that NHBC suffered damages as a result. (Amended Cross-Claim ¶¶ 63-71.) Like Timmons, Rogers argues that any breaches that occurred grew out of duties which existed solely by virtue of the contract between the parties.

The validity of Count VI is controlled by the same principles discussed in Part II(A) above. As such, Rogers' demurrer to Count VI is overruled.

### E. *Count VII (Negligence of ReUse)*

In Count VII of its amended cross-claim, NHBC alleges that ReUse entered into a contract with Rogers to supply the Xtra-Fill, which was to be used as the structural fill material for the Genito project. NHBC further alleges that ReUse was negligent in the following respects: (1) it failed to warn NHBC and the other defendants that Xtra Fill had a potential for swelling; (2) it failed to give NHBC and the other defendants instruction on the proper methods for the application and testing of Xtra Fill; and (3) it negligently manufactured, mixed, and stored the fly ash resulting in damage to NHBC. (Amended Cross-Claim ¶¶ 72-81.) For its part, ReUse argues that *Sensenbrenner* prevents NHBC from attempting to recover economic damages in tort because the parties are not in privity of contract.

As explained in Part I(A) above, *Sensenbrenner* holds that "when a product 'injures *itself*' because one of its component parts is defective, a purely economic loss results to the owner for which no action in tort will lie"

absent privity of contract. 236 Va. at 424. (Emphasis added.) However, recovery in tort against parties not in privity with the purchaser of the product is available when it can be established that the negligence jeopardized the safety of persons or property *"other than the product itself."* *Id.* at 424. (Emphasis added.) Applying these principles in Part I(A), this court held that *Sensenbrenner's* "package analysis" applied to dispose of Counts IV, VIII, IX, and XII of Genito's amended motion for judgment. This ruling was based on the fact that Genito contracted with NHBC for the purchase of a "package" development. Pursuant to the contract, this package development was to include, among other things, design and construction services, building materials, site development work, and the provision of suitable fill material. The fill material was thus one of the component parts of the package; and when it proved defective, it caused the "package," i.e., the apartment development, to injure *itself.* According to *Sensenbrenner,* these are purely economic damages which Genito cannot recover absent privity of contract.

At first blush, this analysis would seem to apply to the NHBC's claim against ReUse. But the "package" involved in the NHBC-Rogers contract was different because the package did not include the apartment dwellings themselves. Under the NHBC-Rogers contract, Rogers agreed to provide a site excavation "package," which included, among other things, excavation, grading, the construction of building pads, and the provision of certain materials including the Xtra Fill. Yet, when the fly ash swelled, the damage was not confined to the NHBC-Rogers site development "package" *itself;* the swelling also injured the apartment dwellings. Thus, to the extent the fly ash caused damage to the dwellings, which were not part of the NHBC-Rogers contract package, these losses must be classified as property damages rather than economic losses. Accordingly, the absence of privity does not preclude NHBC's negligence claim against ReUse, and the demurrer is hereby overruled.

F. *Counts XIII and IX (Breach of Express and Implied Warranties by ReUse)*

In Counts XIII and IX, NHBC avers that ReUse made express and implied warranties that Xtra Fill was suitable for use as structural fill material and that ReUse breached these warranties because it provided fill that was highly susceptible to swelling. ReUse shoots back that the economic loss rule also prevents NHBC's breach of warranty claims and points to the *Beard Plumbing* case in support of its claim.

As discussed in Part I(B) above, Va. Code § 8.2-715(2) imposes a privity requirement in warranty cases where the claimant seeks recovery of

consequential economic losses. *See Beard Plumbing*, 254 Va. at 246. Va. Code § 8.2-318, however, abrogates the privity requirement in cases where the claimant seeks recovery of direct economic damages, as long as the claimant "was a person whom the manufacturer or seller might reasonably have expected to use, consume, or be affected by the goods." *See id.* at 245-46.

Accordingly, NHBC's warranty claims in Counts XIII and IX are dismissed insofar as they seek recovery of consequential economic losses. However, Counts XIII and IX are valid to the extent NHBC seeks recovery of direct economic losses, and Defendant's demurrer is overruled in this regard.

### III. *Demurrers to Timmons' Amended Cross-Claim and Fanara's Cross-Claim*

In addition to the claims asserted against ReUse by Genito and NHBC, Timmons and Fanara have also filed cross-claims alleging constructive fraud against ReUse. The cross-claims both allege that before any work was done on the Genito project, ReUse employees represented to Timmons and Fanara that fly ash was suitable as structural fill material on construction projects. The cross-bills also allege that ReUse supplied engineering data and other literature which Timmons and Fanara relied on in giving their qualified approval to NHBC to use the fly ash as filler. Additionally, the cross-bills allege that the fly ash that was actually delivered to the Genito worksite was susceptible to swelling and was therefore different from the material which had been advertised. According to Timmons and Fanara, these recommendations regarding the suitability of fly ash were false and negligently made and resulted in the damage complained of in Genito's amended motion for judgment and in NHBC's amended cross-claim. Timmons and Fanara both pray for recovery against ReUse in the event they are found liable to Genito or NHBC. (Timmons Amended Cross-Claim ¶¶ 4-11; Fanara Cross-Claim ¶¶ 2-11.)

As outlined in Part (I)(E) of this memorandum, a party asserting a claim for actual fraud must establish the following elements by clear and convincing evidence: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance by the party misled; and (6) resulting damage to the party misled. *Evaluation Research Corp. v. Alequin*, 247 Va. 143 (1994). In this case, however, Timmons and Fanara are asserting claims for constructive fraud rather than actual fraud. As such, they need only show that the misrepresentations were made either innocently or negligently, though, their claims must still be established by clear and convincing evidence. *Id.* at 148.

Assuming all the allegations in the two cross-claims are true, as this court must, Timmons and Fanara have properly alleged all the elements of a claim for negligent misrepresentation. Neither of the cross-claims allege which ReUse employees made the misrepresentations or the specific times that the communications were made. However, unlike Counts VI and VII in Genito's amended motion for judgment, the cross-claims here allege sufficient facts to give ReUse the opportunity to shape its defense. *See Mortarino v. Consultant Engineering Services, Inc.*, 251 Va. 289, 295 (1996).

ReUse counters by arguing that Timmons and Fanara are simply trying to create fraud claims out of disappointed economic expectations. ReUse once again points to the *McDevitt* case as support for its proposition and argues that both cross-claims should be dismissed.

ReUse's reliance on *McDevitt* is misplaced. As noted several times above, *McDevitt* simply prevents a plaintiff from attempting to transform a contract claim into a fraud case, where the breaches complained of are based on duties which exist solely by virtue of a contractual relationship between the parties. Here, there was no contractual relationship between the parties. Moreover, ReUse had an affirmative, noncontractual duty to avoid making misleading statements about its products which might cause consumers such as Timmons and Fanara to act to their detriment.

Accordingly, ReUse's demurrers to Timmons' and Fanara's cross-claims are overruled.

### Conclusion

The court's rulings with respect to the validity of each count are detailed above. It is requested that Mr. Watkins submit a properly endorsed order consistent with the foregoing opinion. Upon entry of the order, Genito will have ten days to amend its motion for judgment with respect to the following claims: (1) its third-party beneficiary claims against Timmons, Fanara, ReUse, and Cogentrix; and (2) its claims for actual fraud against ReUse and Cogentrix. Otherwise, Genito's motion for leave to amend its pleadings is denied.