## CIRCUIT COURT OF LOUDOUN COUNTY

Milari Madison

v.

Milton Home Systems, Inc., et al.

April 22, 2013

Case No. 74462

By Judge Thomas D. Horne

Plaintiff has filed a four count Amended Complaint in which she alleges breach of contract (Count I), breach of warranty (Count II), negligence (Count III), and fraud (Count IV). Defendant Milton Home Systems, Inc. ("Milton") demurs to Count II, Count III, and Count IV of the Amended Complaint, and Defendant NTA, Inc. ("NTA") demurs to Count II and Count III of the Amended Complaint.

The following factual allegations are contained in the papers filed by the parties relative to the instant demurrer. Plaintiff, Milari Madison, filed the Amended Complaint against the Defendant, Milton Home Systems, Inc., f/k/a Integrity Building Systems, on December 12, 2012. Plaintiff alleges that, on May 5, 2011, she entered into a Modular House Contract ("Housing Contract") with Defendant Darren McNutt, d/b/a Convenient Installation, for the assembly of the modular housing units (the "modular home") at the property located at 40153 Janney Street, Waterford, Virginia. On November 21, 2011, this Court issued an Order that found Defendant Convenient Installation in default. Furthermore, Plaintiff asserts that, on May 4, 2011, she entered into a contract with Defendant Milton (the "Performance Agreement") that allegedly guaranteed Defendant Convenient Installation's performance under the Housing Contract. The Performance Agreement provides, in relevant part, that:

> Should Convenient Installations fail to materially perform any of its obligations under [the Housing Contract] . . . Integrity shall perform without additional charge to Customer, those obligations, including but limited to delivering and setting on the foundation the modular units and panels.

Upon entering into the Housing Contract and the Performance agreement, Plaintiff tendered $258,739.00 for the cost of designing, constructing, and assembling the modular home. Most recently, on March 7, 2011, through its agents, NTA approved procedures for the installation of the modular home (the "Compliance Document").

Plaintiff has asserted a host of legal bases concerning her right to damages. This Court is asked to determine whether the bases asserted, if any, state a claim for which Plaintiff can be granted relief. In ruling on the demurrer, this Court must first determine the type of loss Plaintiff alleges she suffered.

Plaintiff's Amended Complaint indicates that the modular house's "stairs dead-ended into the roof line, [which] cannot be used as access to the third floor and fail to meet building code." Additionally, Plaintiff asserts that, "[e]very time it rained, water poured into the house" because Milton had not installed a metal roof. Furthermore, Plaintiff asserts that NTA's failure to properly conduct compliance assurance services relating to the modular home design perpetuated the injury Plaintiff suffered. Plaintiff's allegations of shoddy craftsmanship, structural deficiencies, and an absence of oversight are intimately intertwined with the final product that Plaintiff envisioned the mobile home taking. The Supreme Court of Virginia has defined "economic loss" by equating the concept with disappointed economic expectations. *Sensebrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 423 (1988). Thus, it appears to this Court that Plaintiff alleges that she suffered an "economic loss."

The Supreme Court of Virginia has established limitations on the legal claims that permit recovery for parties sustaining an economic loss. "Under the 'economic loss rule,' losses suffered as a result of the breach of a duty assumed only by agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." *Filak v. George*, 267 Va. 612, 618 (2004). In other words, unless a duty arises between the parties independent of the Housing Contract and the Performance Agreement, this Court is forced to limit Plaintiff's basis of recovery to counts concerning the law of contracts.

More specifically, the Defendants' demurrers pertain to Plaintiff's attempted recovery on the basis of breach of warranty, negligence, violations of the Virginia Consumer Protection Act (VCPA), and fraud. In order to sift through the host of Plaintiff's allegations and determine whether a basis

for recovery exists, this Court must address each of Plaintiff's asserted violations separately.

With respect to Plaintiff's breach of warranty claim, the Supreme Court of Virginia has made it clear that the law of contracts provide the lone legal basis of recovery. "Privity is required to recover economic loss[es] . . . due to the breach of the implied warranty of merchantability" and the law of contracts provides the sole redress. *Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518, 191 (2003); *Rotonda Condominium Unit Owners Ass'n v. Rotonda Assoc.*, 238 Va. 85, 89 (1989). The Court observes that two contracts, the Housing Contract and the Performance Agreement, established the duties and obligations of and between Plaintiff, Milton, and Convenient Installation. The Compliance Document, however, was an agreement between Milton and NTA, meaning that NTA's relationship to Plaintiff derives solely by virtue of Milton executing an independent contract with Plaintiff. In other words, Plaintiff does not enjoy privity with NTA merely through the existence of the Compliance Document. As such, it is the Housing Contract and/or the Performance Agreement that serve as the legal basis that grants Plaintiff the right to recover under a breach of warrant claim, not tort law.

With respect to Plaintiff's negligence claim, the Supreme Court of Virginia has established that claims of negligence concerning economic losses are subject to contract law. "A plaintiff may not recover in negligence for solely economic loss in the absence of privity of contract." *Rotonda Condominium Unit Owners Ass'n v. Rotonda Assoc.*, 238 Va. 85, 89 (1989). The Court observes that the sole source of privity Plaintiff enjoys with Milton derives from the Performance Agreement and that Plaintiff enjoys no privity with NTA. As such, this Court cannot permit Plaintiff's recovery by allowing Plaintiff to bootstrap a negligence claim based in tort law onto the proper province of contract law.

With respect to Plaintiff's claim of a VCPA violation, the Court observes Milton did not sell modular housing units to Plaintiff. Instead, Milton sold the modular housing units to an intermediary, Convenient Installation, through whom Plaintiff contracted for the purchase of the modular housing units. As such, the VCPA does not permit Plaintiff to recover from Milton by reaching through Convenient Installation.

With respect to Plaintiff's claim of fraud, the Supreme Court has established that fraud claims may arise apart from contract law. "In order to state a cause of action for fraud, the alleged misrepresentations must amount to a breach of a common law duty, not one existing between the parties solely by virtue of a contract." *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 559 (1988). Plaintiff identifies several instances, prior to entering the Performance Agreement, where Milton, through its agents, allegedly engaged in misrepresentations in order to induce Plaintiff into contracting for the Performance Agreement. In other words, allegations

pertaining to events that occurred prior to the Performance Agreement implicate laws outside of contract law and thus permit Plaintiff to recovery on the basis of tort law. The Court, however, observes that Plaintiff's claim of fraud in the inducement is buried in Count IV among a host of extraneous allegations, including violations of the VCPA. The Court notes that, for future pleadings, Plaintiff should make a concentrated effort on separating out alleged violations that are distinguishable from each other.

Therefore, this Court finds that Milton and NTA's Demurrers with respect to Count II and Count III should be sustained. Additionally, this Court finds that Milton's Demurrer with respect to Count IV is overruled in part and sustained in part. Plaintiff is permitted to proceed on allegations that concern fraud in the inducement. Plaintiff must file a Bill of Particulars with this Court regarding the fraud in the inducement claim for which Milton must respond within twenty-one days.

The Court observes that NTA, even though no longer a party in this case, agreed to furnish documents relevant to Plaintiff's claims in lieu of a third-party subpoena.